BURT v. STRINGFELLOW et al.

No. 2603.  Decided August 20, 1914.  Motion to Modify Judgment Denied October 7, 1914 (143 Pac. 234).

1.  VENDOR AND PURCHASER—OPTIONS—NEW AGREEMENTS. Where an agreement was made between landowners and a broker giving the broker an option to purchase the land within thirty days at a specified price, and, after the expiration of such thirty days, a new agreement was made giving him an option to purchase for a further period, the second agreement superseded the first, and the rights of the parties were to be measured thereby in so far at least as they contained different provisions. (Page 212.)

2.  APPEAL AND ERROR—RECORD—MATTERS PRESENTED FOR REVIEW. The setting aside of a default judgment could not be reviewed on appeal, where there was nothing in the record from which it could be determined whether or not the court abused the discretion vested in it, as the presumption is that there were sufficient facts presented to the court to authorize its action. (Page 212.)

3.  CONTRACTS—CONSTRUCTION—ASCERTAINING INTENTION. Where the parties to a contract differ with regard to its meaning, and the terms are doubtful or ambiguous, the first duty of the court is to ascertain the actual intention of the parties when the contract was entered into. (Page 213.)

4.  CONTRACTS — CONSTRUCTION — INTENT — SURROUNDING CIRCUMSTANCES. The intention of the parties to a contract must be determined from the language used when applied to the subject-matter and the surrounding circumstances and conditions. (Page 213.)

5.  CONTRACTS—CONSTRUCTION—GIVING EFFECT TO WHOLE INSTRUMENT. In construing a contract all the words and expressions used by the parties must be given full force and effect, unless

to do so leads to an absurdity or is contrary to the manifest purpose or intention of the parties. (Page 213.)

6. CONTRACTS—CONSTRUCTION—NECESSITY OF CONSTRUCTION. Where the language of a contract is clear and all of its terms are explicit and certain, it is not open to construction. (Page 213.)

7. CONTRACTS—CONSTRUCTION—IMPLIED PROVISIONS. A contract may be so drawn or worded that certain terms may be inferred, and a term which can be inferred from a consideration of the entire instrument is as much a part of the contract as if expressly set forth therein. (Page 214.)

8. EVIDENCE—PAROL EVIDENCE—CONSTRUCTION OF CONTRACT. Where the terms of a contract are ambiguous or uncertain, parol evidence is admissible to define the nature and qualities of the subject-matter, the situation and relation of the parties, and all of the circumstances, in order that the court may put itself in the place of the parties, see how the terms of the instrument affect the subject-matter, and ascertain the signification which ought to be given to any phrase or term which is ambiguous or susceptible of more than one interpretation, even though the result of such evidence contradicts the usual meaning of terms and phrases used.[1] (Page 215.)

9. EVIDENCE—EXTRINSIC EVIDENCE AS TO CONSTRUCTION OF CONTRACT. Where an agreement between landowners and a broker gave the broker an option to purchase within thirty days, and after the expiration of such thirty days a new agreement was made giving him such option for a further period, though this superseded the first agreement, as they covered the same subject-matter, and the one was apparently a continuation of the other, the terms of the first might be considered in construing the second, for the purpose of throwing light upon the intention of the parties. (Page 215.)

10. BROKERS—CONSTRUCTION OF CONTRACT—OPTION TO BUY WITH PRIVILEGE ON COMMISSION. An agreement between landowners and a broker gave the broker an option to purchase the land at a specified price within 30 days, and provided that in case a bona fide sale was on, an extension of fifteen days would be allowed, and further that a commission of five per cent for selling the property would be paid. A second agreement executed after the expiration of the first granted a similar option for a further period, and contained a similar provision as to paying commissions, but contained no provision as to extending the time of the option. *Held*, that the second agree-

---

[1] *Caine* v. *Hagenbarth*, 37 Utah 69; 106 Pac. 945.

ment, especially when construed in connection with the first agreement, was intended to give the broker not only an option to purchase at the price specified, but also the right to sell the property to others on a commission at the price and within the time specified in the agreement.[2]  (Page 215.)

11.  BROKERS—RIGHT TO COMMISSIONS—SALE BY OWNER DIRECT. Where a broker who was given an option to purchase. land at a specified price or to sell the land to others on commission at such price within a time specified entered into negotiations for a sale of the property, and would have effected a sale had not the owners induced the prospective purchaser to buy direct from them, he was entitled to the specified commission.[3] (Page 217.)

12.  BROKERS—AMOUNT OF COMMISSIONS—PAYMENT FOR OPTION. Where an agreement between landowners and a broker gave the broker an option to purchase the land at a specified price or to sell on commission for such price, the receipt of fifty dollars of which price paid for the option was acknowledged, he was not entitled, where a sale was effected, to recover the fifty dollars so paid in addition to the commissions, as this was the consideration for the privilege he obtained by the contract, and he could only apply it on the purchase price by purchasing the property himself.  (Page 217.)

Appeal from District Court, Third District; *Hon. C. W. Morse*, Judge.

Action by John A. Burt against Arthur Stringfellow and others.

Judgment dismissing complaint.  Plaintiff appeals.

REVERSED, and remanded with directions.

*N. V. Jones* for appellant.

*Zane, Stringfellow & Whitaker* for respondents.

FRICK, J.

The plaintiff, appellant in this court, brought this action to recover a commission which he alleged he had earned under a certain contract which is set forth in and made a part of

[2] *Neighbor* v. *Realty Ass'n*, 40 Utah 619; 124 Pac. 523.
[3] *Butterfield* v. *Con. Fuel Co.*, 42 Utah 499; 132 Pac. 559.

his complaint. The appellant, in his complaint, when stripped of all unnecessary verbiage and evidentiary averments, in substance, alleges that he is a licensed real estate broker; that on September 8, 1911, the respondents, Arthur, Augustus, Eva, Charles and Albert Moroni and Jane Stringfellow, Rose S. Miller, and Dora A. Taggert, entered into a certain agreement with him and one Parley Thueson, whereby the appellant and said Thueson were given an option "to either purchase or sell to other parties" certain real estate which is duly described, and the purchase price thereof, the conditions of sale, and the amount of commission to be paid are all fully set forth; that it was stipulated in the contract that time was of the essence, but that the time limit fixed therein might be extended, and that for a consideration duly paid had been extended; that said Thueson had assigned all of his interest in said contract to appellant; that in pursuance of said agreement the appellant took certain parties to see and examine the real estate in question for the purpose of inducing them to purchase the same; that said parties were able, and expressed a willingness, to purchase said property at the price and upon the terms stipulated in the contract aforesaid, and would have purchased the same from appellant had not some of the respondents interfered and induced the said parties to purchase the property directly from respondents; that the appellant "would have sold and delivered the said property (to the parties to whom he had shown it), and they would have purchased it within the time, terms and provisions stated in plaintiff's contract of sale, had it not been for the unlawful interference of the defendants"; that the respondents sold said property to the parties aforesaid for the price stipulated, and thus prevented appellant from doing so within the time fixed in the contract; that the commission provided for in said contract was five per cent of the selling price, amounting to $450, and that appellant had paid fifty dollars on the purchase price to which he was entitled; that he had duly demanded from respondents said commission and said fifty dollars, and that they refused to pay the same or any part thereof—wherefore he demanded judgment for said $500 and costs.

In view that the decision hinges upon the construction of the contract referred to in the complaint, and in further view that the original or first contract, and what, by appellant, is termed an extension thereof, are both made a part of the complaint, we shall also set them forth.

The first contract, which is dated September 8, 1911, after stating the parties thereto, reads as follows:

"Witnesseth: That the said parties of the first part by these presents give to the said second parties the exclusive option to purchase the following described real estate, and improvements, located in Salt Lake County, Utah, to-wit (fully describing same), for the sum of nine thousand dollars ($9,000.00), payable in the following manner, to-wit: Twenty-five dollars cash, the receipt of which is hereby acknowledged, and eight thousand nine hundred seventy-five dollars ($8,-975.00) on or before thirty days from the date this contract is signed, time being of the essence of this contract. Said second parties agree to pay $100.00 toward taxes, etc. If the said $8,975.00 shall not be paid within the limit of the thirty days, then the said second parties shall forfeit all moneys heretofore paid as liquidated damages and this contract shall be declared at an end and of no further effect. In case a *bona fide* sale is on an extension of fifteen days will be allowed.

"The parties hereto have hereunto set their hands and seals this 8th day of September, 1911. And said parties agree to pay five per cent commission for selling said property."

The second contract was executed October 18, 1911, and is worded precisely like the first one, except that it is admitted that fifty dollars had been paid; that the remaining $8,950 was to be paid "on or before November 15, 1911"; and, further, that "said first parties agree to convey said property by warranty deed free and clear of all incumbrances, and furnish an abstract of title continued to date hereof. They, the said first parties, further agree to pay a commission of five (5%) per cent on the selling price of said property." Thueson is also omitted as a party from the second contract.

It will be noticed that, while the agreement to convey by warranty deed free of incumbrances and the furnishing of

an abstract of title are new features in the second contract, that provision that "in case a *bona fide* sale is on an extension of fifteen days will be allowed" is omitted from the second contract. We remark that, except for the purpose of construction, we shall only consider the second agreement. We do so because, in our judgment, the second agreement superseded the first one, and thus the rights of the parties must be measured by the second agreement in so far at least as the two contain different provisions.

A general demurrer was interposed to the complaint, which was overruled, and, the respondents failing to plead further, a judgment by default was entered against them. Upon respondents' application, however, the default judgment was set aside, whereupon they moved the court to dismiss the action for the reason that the complaint failed to state a cause of action, which motion was granted, and the complaint was dismissed, and judgment entered accordingly.

We shall treat the motion to dismiss as a general demurrer.

Appellant insists that the court erred: (1) In setting aside the default judgment; and (2) in dismissing the complaint upon the ground stated, and in entering judgment as aforesaid. We cannot review the court's action in setting aside the default judgment, for the reason that there is nothing in the record from which we can determine whether or not the court abused the discretion vested in it in that regard. The presumption is that there were sufficient facts presented to the court to authorize its action in setting aside the default judgment, and until that presumption is overcome the court's ruling must prevail. We proceed, therefore, to a consideration of the court's ruling in dismissing the complaint, which is the serious question in the case.

The only information we have respecting the ground upon which the trial court based its decision is found in respondent's brief, where, in referring to the contract sued on, counsel say:

"The instrument itself discloses no principal and no agency; it merely discloses the fact that an option was given to purchase within a certain time the property mentioned

therein. This was our theory of the matter when we appeared for trial, and the lower court adopted our theory.''

It is apparent, therefore, that the trial court was controlled by what it determined the rights of the parties were under the contract, as it construed it, rather than by the allegations of the complaint. In other words, the court looked to the provisions of the contract as it construed them alone, and in doing so arrived at the conclusion that the contract merely gave the appellant a right or option to purchase the property in question at a fixed price within a specified time, and, inasmuch as he did not allege that he had exercised the option and had tendered the purchase price within the time specified, therefore he could not recover, regardless of the other allegations contained in the complaint. If appellant, under the contract, was limited to a mere right to purchase the property in question for the price and within the time stipulated, then the court's ruling is right. If, however, the contract gave appellant the right to sell the property to others at the price and within the time specified in the contract for a five per cent commission, then, in view of the allegations in the complaint, the ruling, in our judgment, cannot be sustained.

The question that we must determine therefore is: What was the intention of the parties to the contract, with respect to the matters just stated, at the time it was entered into? Was it intended to limit appellant to a mere right of purchase, or did the parties intend to couple with that right also a right to sell the property to any purchaser, and, if such a sale were made, that appellant should receive the commission named in the contract? In case parties **3, 4** have entered into a contract and differ with regard to **5, 6** its meaning, and the terms of the contract are doubtful or ambiguous, the first duty of the court is to ascertain the actual intention of the parties at the time the contract was entered into. This intention must be determined from the language used by the parties when applied to the subject-matter of the contract and the circumstances and conditions surrounding the parties. In arriving at a conclusion all the words and expressions used by the parties in the contract

must be given full force and effect, unless to do so leads to an absurdity or is contrary to the manifest purpose and intention of the parties. Of course, where the language is clear, and all the terms of the contract are explicit and certain, it is not open to construction. In case, however, a construction is called for, the rule to be applied is well stated in 2 Elliott on Contracts (1913), Section 1508, in the following words:

"When a contract is ambiguous and open to construction, the true end to be reached is to ascertain what the parties intended, and when that intention is found it prevails over verbal inaccuracies, inapt expressions, and the dry words of the stipulations. The court should, as far as possible, place itself in the position of the parties when their minds met upon the terms of the agreement, and then from a consideration of the writing itself, its purpose, and the circumstances surrounding the transaction, endeavor to ascertain what they intended and what they agreed to do; i. e., upon what sense or meaning of the terms used, their minds actually met. The purpose of all rules for the construction of contracts is to aid in ascertaining the intention of the parties from a construction of the whole agreement."

In other words, the rules of construction should be considered as servants, and not as masters, and thus one rule should not be given undue prominence while another is given but slight or no effect.

Again, a contract may be so drawn or worded that certain terms may be inferred. This rule is tersely stated by the author in 2 Page on Contracts, Section 1118, in the following words:

7

"Since a contract is to be construed as a whole, terms which can be inferred from a consideration of the entire instrument are as much a part of the contract as if expressly set forth therein."

The same thought is expressed in another form by the Supreme Court of Washington in the case of *Noon* v. *Mironski*, 58 Wash. 453; 108 Pac. 1069, where it is said:

"If the contract by its conditions and legal effect invests a party with a right, it is the same as if the right had been expressly stipulated in the instrument."

Moreover, if the terms of the contract are ambiguous or uncertain, the court should, within the rules and safeguards established by the courts, permit the parties or either of them to introduce parol evidence to aid the court in arriving at the true intention of the parties.   The rule respecting the admissibility of parol evidence under the forego-      **8** ing circumstances is adopted by Mr. Elliott, from Browne on Parol Evidence, in 2 Elliott on Contracts, Section 1655, as follows:

"Parol evidence is admissible, in the construction of contracts, to define the nature and qualities of the subject-matter, the situation and relation of the parties, and all the circumstances, in order that the courts may put themselves in the place of the parties, see how the terms of the instrument affect the subject-matter, and ascertain the signification which ought to be given to any phrase or term in the contract which is ambiguous or susceptible of more than one interpretation; and this, although the result of the evidence may be to contradict the usual meaning of terms and phrases used in the contract; but, if the words are clear and unambiguous, a contrary intention may not be derived from the circumstances."

See, also, 1 Elliott on Evidence, Sections 576-605.   For a further discussion of the subject respecting the construction of contracts and the rules relative thereto see *Caine* v. *Hagenbarth*, 37 Utah 69; 106 Pac. 945.

It is also a well-established doctrine that one and the same person may enjoy the privilege of purchasing, and at the same time have the right of selling on commission, either personal or real property.   See cases referred to in the case of *Neighbor* v. *Realty Ass'n*, 40 Utah 619; 124 Pac. 523.

Applying the foregoing rules to the contract in question, it seems to us that the construction placed upon it by the trial court is not only too narrow, but in some respects is clearly contrary to the apparent intention of the par-      **9, 10** ties.   While, as we have already said, the last or second agreement must be deemed to have superseded the first one, yet, since the agreements covered the same subject-matter and one is apparently a continuation of the other, we may at least inspect the terms of the first one for the purpose of receiving some light upon the question of intention.   It will be observed

that the first agreement contained this provision: ''In case a bona fide sale is on, an extension of fifteen days will be allowed.'' This provision, of course, can be given but one meaning, and could have been intended for but one purpose, namely, that if appellant had a purchaser in view with whom he was in good faith negotiating for the sale of the property, then he should have an additional fifteen days to complete the sale. This provision was followed by the one whereby respondents agreed ''to pay five (5%) per cent commission for selling said property.'' Now, it must be manifest to all that, if appellant was given merely an option to purchase, then both the provision for an extension of time in the form it was stated and the one respecting a commission were wholly unnecessary and meaningless. If, upon the other hand, it was intended to give him an option to purchase and also a right to sell upon commission, both the provisions are given full force and effect, and they are given no more than their natural and ordinary force and effect. When we come to consider the second agreement we find that the first provision was omitted, but the parties again there agree as follows: ''They, the said first parties, further agree to pay a commission of five (5%) per cent. on the selling price of the property.'' Again we ask: Why agree to pay a commission fixed by the selling price if appellant was not given the right to sell, and thus earn the commission provided for? It is true that a party may be given the right to buy or sell property at a price net to the owner, and thus may be given the right to retain all he obtains over such price. Such was the case in *Neighbor* v. *Realty Ass'n, supra.* The agreement in question here is, however, not such a one. It seems to us that it was the intention of all the parties to the contract in question to grant the appellant a fixed time within which he had the exclusive right either to purchase or sell the property at the price stipulated in the contract, and if he did either he was to receive 5 per cent of the selling price as a commission. By giving the contract in question such a construction we give full force and effect to all the terms therein used by the parties, and if we give it any other construction we must pass over some words and phrases, if not clauses, without giving

them any effect whatever. After a careful consideration of the whole contract we are forced to the conclusion that the district court did not give full force and effect to all the language used in the contract, as must be done in order to preserve and enforce the rights of all the parties thereto.

We are also of the opinion that appellant in his complaint has alleged sufficient facts to withstand a general demurrer. We are also of the opinion that he has alleged sufficient facts, which, if proved, will entitle him to recover the commission provided for in the contract. The law governing brokers' commissions and when they are entitled to recover them for the sale of or for procuring a purchaser for real or personal property is stated in *Butterfield v. Con. Fuel Co.*, 42 Utah 499; 132 Pac. 559. We think the allegations of appellant's complaint bring him within the rule laid down in that case. See, also, *Hoadley* v. *Savings Bank,* 71 Conn. 599; 42 Atl. 667; 44 L. R. A. 321, where, in a note, the cases with respect to when a broker is entitled to commissions are collated.

We remark that appellant cannot recover the fifty dollars he paid upon the two contracts. That amount was paid as part consideration for the privilege he obtained in the contract, and he could only claim it as part of the purchase price had he himself purchased the property.

The judgment is reversed, and the cause is remanded to the District Court of Salt Lake County, with directions to reinstate the case and permit the respondents to answer the complaint if they are so advised, and to proceed to hear and determine the case upon the issues joined and in accordance with this opinion.

Costs to appellant.

McCARTY, C. J., and STRAUP, J., concur.