# UDY v. JENSEN.

No. 4007.   Decided  January  8,  1924.   (222  Pac.  597.)

1. CONTRACTS—WHEN TERMS ARE AMBIGUOUS, ACTUAL INTENTION OF PARTIES AT TIME OF EXECUTION MUST BE ASCERTAINED. Where the parties to a contract differ as to its meaning and the terms are doubtful or ambiguous, the first duty of the court is to ascertain the actual intention of the parties at the time the contract was entered into.[1]

2. CONTRACTS—INTENTION DETERMINABLE FROM LANGUAGE USED, WHEN APPLIED TO SUBJECT-MATTER AND SURROUNDING CIRCUMSTANCES. Intention of parties to ambiguous contract, must be determined from the language used, when applied to the subject-matter of the contract and the circumstances and conditions surrounding the parties.[1]

3. CONTRACTS—IN CONSTRUING AMBIGUOUS CONTRACT, EXPRESSIONS USED MUST BE GIVEN FULL FORCE, UNLESS CONCLUSION IS ABSURD OR CONTRARY TO MANIFEST PURPOSE. In construing an ambiguous contract all the words and expressions used by the parties in the contract must be given full force and effect, unless to do so leads to an absurdity or is contrary to the manifest purpose and intention of the parties.[1]

4. CONTRACTS—ESSENCE OF OPTION IS RIGHT OF OPTIONEE TO BUY OR NOT TO BUY AT HIS ELECTION. Essence of an option is the right of the optionee to buy or not to buy at his election; that he is not bound to do so being the distinguishing feature of his contract.

5. CORPORATIONS—CONTRACT HELD AN OPTION TO BUY STOCK. A contract, apparently for the purchase of stock by defendant, party of the first part, which contained a provision that "this agreement shall not be binding upon the party of the first part for any of his property whatsoever," *held* an option to buy, so that defendant was not bound to accept and pay for the stock.

6. CONTRACTS—ACTUAL INTENTION MUST PREVAIL OVER DRY WORDS, INAPT EXPRESSIONS, AND CARELESS RECITATIONS. Actual intention of the parties must prevail over dry words, inapt expressions, and careless recitation in a contract, unless that intention is contrary to the plain sense and binding words of the agreement.[2]

---

[1] *Burt* v. *Stringfellow*, 45 Utah, 207, 143 Pac. 234.
[2] *Caine* v. *Hagenbarth*, 37 Utah, 69, 106 Pac. 945.

Appeal from District Court, First District, Box Elder County; *M. C. Harris,* Judge.

Action by C. A. Udy against Hyrum Jensen. Judgment for defendant, and plaintiff appeals.

AFFIRMED.

*B. C. Call,* of Brigham City, for appellant.

*W. J. Lowe,* of Brigham City, for respondent.

CHERRY, J.

Plaintiff. sued defendant for the price of twelve shares of the capital stock of Tremonton Furniture Company, which it was alleged defendant had in writing agreed to purchase, but had refused to accept and pay for. The defense was that the written agreement constituted an option in favor of defendant, and not a contract to purchase. Defendant had judgment, and plaintiff appeals. The interpretation of the contract is the only question presented. The written agreement is as follows:

"This agreement, made this 15th day of July, 1920, by and between Hyrum· Jensen of Collinston, Utah, party of the first part, and C. A. Udy of Ogden, Utah, party of the second part, witnesseth:

"That in consideration of the covenant on the part of the party of the second part hereinafter contained, the party of the first part hereby covenants and agrees to and with the party of the second part to pay to him the par value ($100.00) per share for twelve shares of stock in the Tremonton Furniture Company, plus 4 per cent. for accrued gains since January 15, 1920.

"Payments to be made as follows: $416.00 (four hundred sixteen no/100) together with interest at the rate of 8 per cent. per annum from date, to be paid on or before January 1st, 1921, at which time the said party of the second part is to deliver to the party of the first part four shares of such stock, together with all gains and dividends adhering thereto.

"On or before January 1st, 1922, a like sum of $416.00 with accrued interest at the rate above stated shall be paid for another four shares of said stock, and on or before January 1st, 1923, the

final payment of $416.00, with accrued interest at the rate stated, shall be paid for the last four shares of said stock.

"This agreement shall not be binding upon the party of the first part for any of his property whatsoever, but the party of the second part shall hold the certificates of said stock until paid for by the party of the first part; that is to say, that upon the payment of the first amount herein mentioned for the first four shares, the party of the second part shall deliver to the party of the first part certificates for such shares, which shall then be exempt from this contract, and so with respect to the payment and delivery of the second amount and number of shares, when paid for. * * *

"In consideration of the covenant on the part of the party of the first part herein contained, the party of the second part hereby covenants and agrees to and with the party of the first part to sell said stock for the price and terms herein stated, and to claim no share whatever in gains or dividends accruing so long as this contract is observed on the part of the party of the first part."

Apparently deeming the contract ambiguous and uncertain, the trial court, without objection, admitted parol evidence to explain it. This testimony was somewhat conflicting. There was, however, substantial evidence to the effect that the defendant was the president and the principal stockholder of the corporation; the plaintiff was the owner of twelve shares of its capital stock, and shares of stock were owned by various other persons. At a meeting held in June, 1920, at which the plaintiff and defendant and several other stockholders were present, the defendant stated that the company was in debt, but he believed he could "pull it through" if he had time; that he offered to purchase all of the stock at par, on the condition that he "placed none of his personal interests in jeopardy," and did not stand personally liable for it. He refused to give his note for the stock, and said the stock would have to be held until paid for—that he would not be responsible.

The defendant's offer was accepted by some stockholders and rejected by others. He prepared forms of agreement himself, one of which was executed by the plaintiff a month later, as above set forth. Thereafter the corporation failed, and the stock became valueless. The plaintiff tendered delivery of the stock to defendant and demanded payment of the price. The defendant refused to accept the stock or to pay the price, and this action followed.

The trial court concluded that the agreement amounted to an option merely, and that defendant was not bound to accept and pay for the stock. The conclusion of **1-3** the trial court was correct, and in accordance with established rules of construction.

"In case parties have entered into a contract and differ with regard to its meaning, and the terms of the contract are doubtful or ambiguous, the first duty of the court is to ascertain the actual intention of the parties at the time the contract was entered into. This intention must be determined from the language used by the parties when applied to the subject-matter of the contract and the circumstances and conditions surrounding the parties. In arriving at a conclusion all the words and expressions used by the parties in the contract must be given full force and effect, unless to do so leads to an absurdity or is contrary to the manifest purpose and intention of the parties." Frick, J., in *Burt* v. *Stringfellow*, 45 Utah, 207, 143 Pac. 234.

Applying these rules to the contract in question, there is but one reasonable conclusion. The essence of an option is the right of the optionee to buy or not to **4** buy, at his election. That he is not bound to buy is the distinguishing feature of his contract.

The provision in the contract that "this agreement shall not be binding upon the party of the first part for any of his property whatsoever, but the party of the second part shall hold the certificates of said stock until paid for by the party of the first part," cannot be disre- **5** garded, because it is a part of the contract and has a definite signification. By saying the agreement shall not be binding upon the first party for any of his property whatsoever, is equivalent to saying that the agreement to purchase should not be binding upon him at all, because it is only by resort to his property that such an agreement could be enforced against him. The form of expression is inapt and awkward, but, in the light of the **6** circumstances and conditions surrounding the parties, the meaning is clear. The actual intention of the parties must prevail over dry words, inapt expressions, and careless recitation in the contract, unless that intention is contrary to the plain sense and binding words of the agreement. *Caine* v. *Hagenbarth*, 37 Utah, 69, 106 Pac. 945.

"The best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it; for it may be safely assumed that such was the aspect in which the parties themselves viewed it. A result thus obtained is exactly what is obtained from the cardinal rule of intention." *Schuylkill, etc., Co.* v. *Moore*, 2 Whart. (Pa.) 490.

The judgment is affirmed.

WEBER, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.