JONES VS. PEASE. First Appeal.

*Part performance—Specific performance—Delivery of unstamped deed.*

1. Where there is an oral contract for the conveyance of lands by A. to B., *it seems* that a delivery to B. of a deed of *part* of said lands, *unstamped*, and a delivery by him to A. of an *unstamped* deed of other land as a part of the consideration (the omission of the stamps not being with any design to defraud the United States), was a sufficient delivery (under the acts of Congress which authorize the grantee in such a case to have a stamp affixed under certain conditions) to constitute a part performance, *taking the case out of the statute of frauds.*

. Such mutual conveyances, where the deed to B. was soon after stamped by him with A.'s consent, and possession of the land received and retained by him, and a *part* of the purchase price of the lands agreed to be conveyed to him, paid in money, *held* to authorize a decree for a specific performance of the oral agreement.

APPEAL from the Circuit Court for *Dodge* County.

Action for the specific performance of an oral contract for the conveyance of land. The complaint avers that on the 21st of March, 1866, defendant was owner in fee and in possession of a certain grist-mill and water-power, in the village of Lowell, in said county, and also of a certain other lot in said village, described as "lot 15, block D," &c.; and also owned a team of horses, a double wagon, sleigh and harness; that on that day plaintiff and defendant entered into a mutual agreement, by which defendant was to convey and transfer to plaintiff said lot 15, and the undivided half of all the rest of said property, and give him immediate possession thereof (in common with defendant, except as to lot 15), for $8,000, payable as follows: upon the defendant's executing the deed and giving possession of the property, $500 in money, and $1,000 in land belonging to plaintiff; November 1, 1866, $500; March 21, 1867, $1,500; and there being a mortgage upon said mill property, on which $4,200 was then due, plaintiff was to assume one half thereof, as a part of said $8,000; and the balance thereof, after deducting the amounts above stated, was to be paid in two equal installments, on the 21st of March, 1869, and 1870, with interest, to be secured by plaintiff's notes and a mortgage on his undivided half of said mill property. On receipt by defendant of the deed for the land to be conveyed to him by plaintiff in payment of $1000, defendant was to execute a bond to reconvey it upon payment of $1000 in money, with interest. For the purpose of carrying into effect this agreement, the parties met on the same day at Lowell, and entered upon the business of drawing the necessary papers, &c.; and plaintiff and wife then executed to defendant a deed of said land reckoned at $1000, which deed defendant still has; and defendant and wife executed to plaintiff a deed of said lot 15. The notes and mortgage, and the deed for the undivided half of said mill property, had been prepared and were present, but for want of time and revenue stamps the further

consummation of the contract was postponed until March 26, 1866. On the 22d of that month, plaintiff with his family moved into the house on said lot 15, giving up possession of the premises previously occupied by them, and they have ever since been in possession and occupancy of said lot 15. At defendant's request, the completion of the contract was further postponed until March 31, 1866; but about the 28th of that month, plaintiff, at defendant's request, paid him $400 in money as part of the $500 to be paid down as aforesaid. On the 31st, the parties again met, all the necessary papers for the completion of the contract being present; and defendant signed and sealed the deed of the undivided half of the mill property; and plaintiff had duly executed the required notes and the mortgage on his half of said mill property, as security for the sums agreed to be so secured, and was then ready to complete the contract on his part; but defendant, after signing his deed, retained it, saying that his wife did not want to sign it that day, but would do so in a day or two; and at the same time he handed to one Lowth, a notary public who was present, plaintiff's mortgage and notes which were lying on the table in front of the parties. Supposing defendant's statement to be made in good faith, plaintiff did not insist upon the completion of the contract at that time, and the parties separated with the understanding on plaintiff's part that defendant's wife would execute said deed within a day or two; but since that time defendant has utterly refused to complete said contract or deliver said deed. On the 14th of April following, plaintiff tendered defendant $100 and said mortgage and notes, and demanded of him a conveyance of the half of the mill property pursuant to the agreement, and tendered him the bond to be executed by him for the reconveyance of the land conveyed to him by plaintiff as above stated; but defendant refused to execute said conveyance or said bond. On and since said 21st of March, plaintiff " has repeatedly had the keys of said mill

in his possession, doing business therein," has paid a part of the insurance on the mill at defendant's request, and supposing himself to be in possession of said property in common with defendant, under said contract, has labored himself and has hired help to labor with defendant and his workmen on repairing the dam. At the time a part of the papers were executed on the 21st of March, it was not possible to procure revenue stamps, and it was agreed that stamps should be procured and placed on the several instruments necessary to be used, when the business should be finally consummated, defendant authorizing plaintiff to place the necessary stamps on the deed of lot 15, and to cancel them; which plaintiff accordingly did. The mortgage from plaintiff was duly stamped when produced at the meeting of the parties on the 31st of March, and stamps were procured and ready at that time to stamp the other instruments that were to be executed. Plaintiff has always been ready and willing to fulfill the agreement on his part. Prayer, that on payment of the residue of said $500 of the purchase money first to be paid, and the execution and delivery of said notes and mortgage for the balance (after deducting one half the rental value of said mill property since March 31, 1866, and also the value of the outstanding dower right of defendant's wife in said property, if she refuse to join in the conveyance), defendant be adjudged to perform said agreement, except as to the release of the right of dower ; and for general relief.

The answer denies that the oral negotiations of March 21st, 1866, ever became binding upon the parties, or that either of them understood that they were to become binding until all of the written instruments necessary to carry out the same should be executed ; alleges that the $400 received by defendant from plaintiff on the 28th of March, was only a temporary loan made to him by plaintiff, although defendant at that time expected that the sale of said property to plaintiff would soon be perfected, and intended then to allow plaintiff for said sum.

It further alleges that defendant has never taken possession of the land alleged to have been conveyed to him by plaintiff, and that the deed to him has never been stamped according to law, and is invalid; and it denies that at the time of the execution of the deed to plaintiff of lot 15, the mortgage and notes to be given by plaintiff, and the deed of half the mill property to be given by defendant, had been prepared, or that either of them had been prepared and was then present, and denies that the consummation of the trade was postponed at defendant's request as alleged in the complaint; admits that the parties met on the 31st of March, as alleged, and that all papers necessary to complete said contract were there present, but denies that defendant handed plaintiff's mortgage and notes to said Lowth, or assumed any authority over them, or has ever had either of them in his possession; and denies that it was agreed between the parties that defendant should give plaintiff a bond for a re-conveyance of the $1000 tract of land. The answer then denies that since March 31, 1866, defendant has neglected and refus-ed to complete his agreement with plaintiff, and avers that hav-ing found it impracticable to obtain his wife's signature to the deed of the mill property to plaintiff, defendant, about April 9th, informed plaintiff of that fact, and the parties agreed that if defendant would forthwith proceed to the completion of the agreement, plaintiff would accept the conveyance of said mill property without the wife's signature; that they immediately went to the house of the notary Lowth to complete the trade; that defendant then and there offered to deliver to plaintiff a conveyance of an undivided half of said mill property as agreed upon, and called upon plaintiff to pay the $100, balance of the first payment required, but plaintiff was not able to pay said balance, but requested defendant to wait upon him there-for; that defendant declined to do this, and thereupon informed plaintiff that he should consider the negotiation at an end, and tendered plaintiff the $400 previously received from him, and

offered to deliver to him the deed of the $1000 tract, which money and deed were refused by plaintiff, and plaintiff then refused to proceed further in the matter, but has ever since been and still is ready and willing to deliver to plaintiff said money and deed.  The answer further denies that plaintiff has ever had possession of the mill property, or has paid insurance thereon or performed or caused to be performed any work thereon with defendant's knowledge and consent.

The circuit court found the facts as alleged in the complaint, and rendered judgment for the plaintiff as prayed for; and defendant appealed. ·

The facts which this court regards as established by the testimony being stated in the opinion, the testimony itself (which was somewhat voluminous) will not be given.

*Gill & Barber*, for appellant, argued that the delivery by plaintiff to defendant of an unstamped deed passed no title, and was not a payment of a part of the consideration.  In order to entitle a party to a specific performance of an oral agreement to convey land, under the decisions of this court, there must have been a delivery of the possession, a *continued* possession to the commencement of the action, and a payment of a portion of the purchase money.  A part payment of the purchase money, with the delivery of possession of a part only of the premises, is not sufficient. *School Dist. v. Macloon*, 4 Wis., 88–9; *Blanchard v. McDougal*, 6 id., 168; *Smith v. Finch*, 8 id., 249.  2. Specific performance will not be decreed except where a failure to perform would be a fraud upon the party seeking relief.  Fry on Specific Performance, § 388, p. 254; Adams' Eq., 247–8; Willard's Eq., 283.  In this case no fraud can possibly be perpetrated on the plaintiff.  He already has a deed of that portion of the premises of which he has possession.   Conceding that the $400 was a *payment* on the contract, if defendant refuses to proceed further in the performance of it, plaintiff can recover the money at law, 13

Wis., 142. He will then have his money back, and will have a house and lot clear, the title of which is undoubted. Defendant having an adequate remedy at law, there is no ground for equitable interference. Willard's Eq., 268. The want of equity in the case is manifest, when we consider plaintiff's offer to return the $400 and defendant's refusal to receive it. The granting of a decree of specific performance is not a matter of right, but rests in the sound discretion of the court. Adams' Eq., 228, note 1. The effect of such a decree here would be to establish a tenancy in common in property manifestly indivisible, with a right to either co-tenant to apply in equity for a sale of the same, and a division of the proceeds. The court is asked to force upon defendant an unacceptable partner in his property, in order to give plaintiff the benefit of what he may imagine to have been a good bargain.

*E. P. Smith*, for respondent, cited 2 Parsons on Con. (3d. ed.), 516, 518; 2 Story's Eq. Jur., § 792; Fry on Specif. Perf., 247–57; *Davenport v. Mason*, 15 Mass., 92; *Niven v. Belknap*, 2 Johns., 586; *Dygert v. Remerschnider*, 32 N. Y., 642; *Mallins v. Brown*, 4 Coms., 404; *Lowry v. Few*, 3 Barb. Ch., 413. Possession delivered on payment of a part of the purchase money will take the case out of the statute. *Blanchard v. McDougal*, 6 Wis., 169; *Smith v. Finch*, 8 id., 245; 2 Parsons, 852–3; 2 Story, § 760. There is no difference in principle between payment of purchase money and possession given, and the doing of any other act of value on the part of the vendee, for which he could not obtain full relief at law. 2 Story, §§ 759–61, and note to § 765; *Martineau v. May*, 18 Wis., 57; *Daniels v. Lewis*, 16 Wis., 140; *Paine v. Wilcox*, id., 202–16; *Caldwell v. Carrington*, 9 Peters, 86. 2. The deeds, being signed, sealed and delivered, were good at common law, and on demand thereafter made, the grantor refusing to affix a proper stamp, a bill would lie to compel him to do so. *Mallins v. Brown*, 4 Coms., 403; *Aylett v. Bennett*, 1 Anst., 45; Edwards

on Bills &c., 519, note 2; *Hanson v. Michelson*, 18 Wis., 498. The deed of lot 15 was stamped by plaintiff with defendant's approval, and our title is admitted by the pleadings. Plaintiff offered and was ready to stamp his deed to defendant; and the latter should not now be heard asserting his own negligence. On the same principle, in an action for specific performance, a party will not be heard to declare a contract void for want of a corporate seal. *L. & B. R. Co. v. Winter*, Cr. & Ph., 57. Moreover, said deed, when offered in evidence in any court, could be stamped. Revenue Law of 1865, § 163.

DOWNER, J. The parol contract set out in the complaint is admitted or proved, except that part relating to the execution of a bond for the reconveyance of the land the plaintiff agreed to convey to the defendant as security for the payment of one thousand dollars and interest. The execution of the bond, or agreement to execute it, we do not deem material; but if material, the weight of testimony is with the plaintiff. The main question for our consideration is, whether the part performance proved is such as to entitle the plaintiff to the aid of the court to compel a specific performance of the agreement.

The plaintiff contends that he has proved the following acts of part performance: 1. That he paid to *Pease* four hundred dollars as part of the purchase money. 2. That he and his wife, by deed duly delivered, conveyed certain land to *Pease* as security for the payment of one thousand dollars, part of the purchase money, in one year. 3. That *Pease* and wife, by deed duly executed, stamped and delivered, conveyed to the defendant lot 15, block D (which is a part of the land the defendant, in and by the parol contract, agreed to convey to the plaintiff), and consented to his taking possession thereof, and moving his family into the house thereon; and that the plaintiff did take possession of the lot, and still retains possession. 4. That the defendant, in pursuance of the contract, delivered

the plaintiff possession of the mill as tenant in common with himself.

There seems to be no dispute as to the *delivery* of the two deeds, one executed by *Pease* and wife of lot fifteen to *Jones*, and the deed of *Jones* and wife to *Pease* to secure the thousand dollars; but *Pease* claims that these deeds were to be stamped, so as to be valid, only on the final consummation of the trade, and delivery of the deed for the mill and mortgage for the purchase money.  *Jones* contends that the reason why the deeds delivered were not stamped was because they had not, and could not get, in the town where they were executed and delivered, the stamps; and that the agreement of the parties was, that either party might procure stamps and stamp the deeds.   By the provisions of sec. 1, chap. 78, Acts of Congress of 1865, amending sec. 158 of the internal revenue act of 1864, instruments that are made without being stamped, if there is no intention to avoid the provisions of that act, may be, within twelve calendar months after issuing the same, stamped at the instance of any party interested therein, by his appearing before the collector for the proper district, and proving to his satisfaction " that such instrument has not been duly stamped at the time of making or issuing the same, by reason of accident, mistake, inadvertency, or urgent necessity, and without any willful design to defraud the United States of the stamp duty, or to evade or delay the payment thereof."   As the deeds were delivered without stamps under the circumstances stated, each party could have had the deed to him duly stamped before the collector at any time within a year after the delivery, by only procuring the stamps and making the required proof.   After that time, or before, either party *could* procure the deed to be stamped by the collector by paying the penalty of fifty dollars.   Such being the law, we doubt very much whether the delivery of an unstamped deed received by the vendee, and which it is in his power to have stamped and

made valid, ought not to be held a good part performance of a contract. In this case, however, the deed to *Jones* of lot fifteen was very soon after its delivery stamped by *Jones*, as he claims, pursuant to the understanding of the parties when it was delivered; and *Pease*, when informed of it, made no objection to its being so stamped, and we think must be considered as having assented thereto. If the agreement had been, as *Pease* says, that the deeds were not to be stamped till the full consummation of the trade, it is probable that he would have objected to the stamping of the deed to *Jones* before the other deeds were made out and delivered. We have examined the testimony carefully, and come to the conclusion that it proves substantially all that *Jones* contends it does, except as to his possession under the contract of the mill as tenant in common with *Pease*.

The parol agreement is for the sale and conveyance of different parcels of real estate and an interest in personal property, for the sum of eight thousand dollars. Are part payment of the purchase money, and the conveyance of a part of the real estate, and possession thereof under the contract and deed, sufficient part performance to take the parol agreement out of the statute of frauds? It is obvious that the contract must be enforced entire or rescinded. If *Jones* had accepted the four hundred dollars when tendered to him by *Pease*, and the latter had also reconveyed to *Jones* the land that *Jones* had previously conveyed to *Pease*, and such deed had been accepted by *Jones*, then the latter could have been compelled to reconvey to *Pease* lot fifteen, and also to account to him for its use and occupation. It is however contended by the appellant, that the contract is not taken out of the statute unless possession is delivered to the purchaser under the contract of *all* the real estate. It appears to us that this position is untenable. As we said before, the contract must as a whole be enforced, or entirely rescinded; and we see less difficulty in fully carrying

into effect the agreement of the parties, than in undoing what they have done. And we do not think, when a party agrees by parol to convey different parcels of land, that possession of each parcel under the contract is necessary to take it out of the statute. If it is, then possession may be given of the most valuable portion of the lands, and the purchase money all be paid, and yet the purchaser be turned out of possession of the very lands he has taken possession of under the contract, by an action of ejectment, and compelled to pay for their use and occupation, and be left to an action at law to recover the purchase money paid. In *Smith v. Underdunck,* 1 Sandf. Ch., 579, the chancellor held the possession of one parcel of land, under a parol contract for the conveyance of several parcels for a gross sum, and the payment of the purchase money, sufficient to take the case out of the statute ; and, on principle, we are unable to perceive how any other doctrine can be successfully maintained.

*By the Court.*—The judgment of the circuit court is affirmed.