The Metropolitan Lumber Company v. The Lake
Superior Ship Canal, Railway & Iron Com-
pany, and The Keweenaw Associa-
tion (Limited).

*Mistake—Land contract—Reformation—Laches—Statute of frauds.*

1. There is a conflict in the books upon the question of the effect
of the statute of frauds upon the jurisdiction of courts
of equity to reform instruments made in pursuance of
oral agreements, where the correction sought is the addition
of lands to those described; but, whatever may be the rule
where nothing has been done under the oral agreement, in
this country the overwhelming weight of authority supports
the jurisdiction where part performance is shown sufficient to
warrant a specific performance under an oral contract.

2. The jurisdiction of a court of equity to correct a written con-
tract for the sale of standing timber by adding thereto the
descriptions of certain lands which were covered by the oral
negotiations for the sale of the timber, but which were, by
the mutual mistake of the parties, omitted from the written
contract, is sustained; it appearing that, before the omission
was discovered, a payment had been made on the contract,
and the purchaser had proceeded to lumber the lands not in dis-
pute.

3. The claim that a mistake had been made was asserted as soon
as the mistake was discovered, and the claim was insisted on
at all times thereafter. Suit was not immediately commenced,
but complainant never gave the defendants reason to suppose
that it had abandoned or intended to waive its claim, and no
injury resulted to the defendants from the delay. And it is
held that complainant was justified in exhausting persuasion
before resorting to litigation, especially in view of the repeated
admissions of the president of the vendor corporation, who
negotiated the sale of the timber in its behalf, that he under-
stood that the omitted lands were a part of the contract.

Appeal from Iron. (Stone, J.) Submitted on briefs
June 23, 1894. Decided September 25, 1894.

Bill to correct a contract for the purchase of timber. Defendants appeal. Decree affirmed. The facts are stated in the opinion.

*Mead & Jennings* (*E. E. Osborn,* of counsel), for complainant.

*Ball & Ball,* for defendants.

HOOKER, J. Complainant's bill is filed to correct a contract for the purchase of timber, by adding to it the description of certain lands which is claimed to have been omitted by mistake. The negotiations took place in Chicago, between the presidents of the corporations, complainant and defendant. The contract conveying the timber was subsequently prepared by defendant's counsel in Michigan, and was afterwards signed by the respective parties. Upon discovering the omission, which discovery was made some time after the contract was signed by complainant's president, defendant was asked to correct the mistake, but declined to do so without suit.[1] Some time afterwards this suit was instituted. The learned circuit judge who heard the cause filed a written opinion, in which he quotes the testimony at length, which, we think, is as fair a review of the case as could be made. We agree with him that the evidence shows that the parties who negotiated the deal both understood that the "Perch Lake Group" of lands was included in the purchase. It appears to have been omitted because defendant's president, Mr. Davis, did not specifically mention it in his telegram of instructions,—if it can be called such,—which he sent to Mr. Longyear, who was agent for the defendant at

---

[1] The land was subsequently conveyed to the defendant Keweenaw Association, but it was conceded that it had no equities superior to those of its grantor.

Marquette, from whom the attorney received the information upon which he prepared the contract. The telegram read as follows, viz.:

"CHICAGO, June 6, 188—.

"J. M. LONGYEAR:

"Have sold to Atkinson all groups under refusal to him; also the Felch group.

"THEO. M. DAVIS."

It appears that complainant had written options on all the land covered by the negotiations, except the Felch group and the Perch lake group. The latter, not being mentioned in the telegram, was omitted. All of the witnesses who were present at the Chicago interview agree that this group was talked about, and specifically mentioned as one of the tracts to be included. Davis himself concedes this, but claims that he was figuring upon the basis of the amount of timber upon the groups for which the complainant had written options, and that he supposed the Perch lake group was one of these. There seems little doubt of the justice of complainant's claim, and we are satisfied that it is justly entitled to relief.

It remains to inquire whether there is any legal obstacle to granting the relief. It is opposed upon several grounds, viz.:

1. The mistake was not mutual.

2. The mistake on the part of complainant was committed through gross negligence, and equity will not relieve in such cases.

3. Delay in attempting to enforce complainant's claim, and going on to carry out the contract after refusal by the defendant to correct the contract, until it was impossible to put the parties in *statu quo*, constitutes a waiver of complainant's claim.

4. The addition of more land to the description, upon evidence of a parol contract, is contrary to the statute of frauds.

We are satisfied that the omission was the result of the

mistake of defendant's president in sending the telegram, supposing it to be full enough to cover the Perch lake group. There is no reason to believe that he intentionally caused this omission.

We cannot accede to the proposition that complainant's president (Atkinson) was so negligent in executing the contract without discovering the omission as to deprive the complainant of property worth $50,000. He had no reason to anticipate an attempt to cheat his company, and therefore had no occasion to be more than ordinarily careful. He was dealing with a concern whose business was methodically conducted, and he knew that it was in possession of accurate descriptions. The contract was drawn by a reputable and able lawyer. To hold that he was negligent would be to say that acceptance of a deed or writing without a comparison and verification of descriptions is such negligence as to preclude relief against mistake, no matter how serious the consequences. Atkinson died before these proceedings were commenced, and we have not the light that his testimony might throw upon the question of caution. From the testimony of Mr. Bennett, one of the defendants' witnesses, it would seem that he took the trouble to bring the contract to defendant's office, to make a comparison of the descriptions, which was done, and he went away satisfied. During this time he was ill, with a malady from which he died soon after.

The claim that a mistake had been made was asserted as soon as it was discovered, and was insisted on at all times afterwards. It is true that suit was not immediately commenced, but complainant never gave the defendants reason to suppose that it had abandoned or intended to waive its claim. No injury resulted to the defendants from the delay, and the complainant was justified in exhausting persuasion before resorting to litigation, especially in view of Davis' repeated admission that he under-

stood the Perch lake land was a part of that contract.

It is strenuously urged that the statute of frauds precludes the relief sought by complainant, the negotiations having been oral. There is conflict in the books upon the question of the effect of the statute of frauds upon the jurisdiction of courts of equity to reform instruments made in pursuance of oral agreements, where the correction sought is the addition of lands to those described. We are cited to the case of *Macomber v. Peckham*, 16 R. I. 485, as a recent adjudication upon the subject, and to *Climer v. Hovey*, 15 Mich. 18, in support of defendants' contention. In the former case the court was careful to withhold an opinion beyond what was required by the facts before it. In stating the facts, Durfee, C. J., says:

"Nor is it a case in which it is claimed that the contract is taken out of the operation of the statute of frauds by part performance on the part of the complainant. It presents the naked question whether oral testimony will be received in equity for the purpose of reforming' a written contract for the sale of real estate on the ground of mutual mistake, and of enforcing it specifically when reformed."

Opposed to this case is that of *Hitchins v. Pettingill*, 58 N. H. 386, decided 11 years earlier by the supreme court of the state of New Hampshire, which was not noticed by the Rhode Island court. It was there held that—

"When reformation is sought of a deed which, through fraud or mistake, conveyed less land than was orally bought and paid for, the case does not stand as if there were no deed; and the error may be corrected without proof of such part performance as is necessary for a decree of specific performance compelling a conveyance of the whole land when no part of it has been conveyed."

Many cases are cited in the opinion as supporting this proposition. This subject is also thoroughly considered in .

the notes to *Woollam v. Hearn,* 2 White & T. Lead. Cas. Eq. 1008 *et seq.*

The case ·of *Climer v. Hovey, supra,* like the· Rhode Island case, was one where the parties had not acted under the contract. In the language of CAMPBELL, J.:

"No payments are alleged, and no act of part performance.· * * * We are, therefore, brought down to the simple inquiry whether mere mistake, where neither party has parted with or done anything beyond signing an executory contract for one description of land, can authorize a court of chancery to enforce a parol contract by applying the terms written concerning one estate to another not referred to in writing."

The bill was dismissed, Mr. Justice CAMPBELL basing his opinion upon the fact that nothing had· been done under the contract, and that it was therefore within the operation of the statute of frauds. Chief Justice MARTIN concurred in the result. ·Mr. Justice COOLEY reserved his opinion as to the power of the Court to correct a mistake in a contract, in a suit to .enforce it, concurring upon other grounds, and with him Mr. Justice CHRISTIANCY concurred.

But, whatever may be the rule where nothing has been done under the oral contract, we think that in this country the overwhelming weight of authority supports the jurisdiction where part performance is shown sufficient to· warrant a specific performance under an oral contract. In this case a payment was made, and the purchaser proceeded to lumber the tracts not in dispute, before the· omission was discovered, as was the case in *Hitchins v. Pettingill,* above cited.

The case of *Toll v. Davenport,* 74 Mich. 397, appears to· recognize the jurisdiction of chancery in such cases, where a parcel was omitted from a mortgage, relief being denied, for the reason that the rights of a *bona fide* purchaser had intervened.

In the later case of *Kimble v. Harrington*, 91 Mich. 281, a mortgage was reformed by the insertion of the description of a 40-acre parcel a quarter of a mile distant, which was omitted by mistake.

The decree of the circuit court will be affirmed, with costs.

The other Justices concurred.