## HOGAN v. SWAYZE et al.

No. 4233. Decided May 12, 1925. Rehearing Denied June 5, 1925.
(237 P. 1097.)

1. EVIDENCE—PAROL EVIDENCE RULE APPLIES TO PRIOR OR CONTEMPORANEOUS ORAL AGREEMENTS AND NOT THOSE SUBSEQUENT TO WRITTEN CONTRACT. Parol evidence rule, that prior or contemporaneous oral agreements are merged in written contract, and are not admissible in evidence to vary it, is not applicable to oral agreements subsequently made.

2. SPECIFIC PERFORMANCE—EVIDENCE HELD TO SHOW MAKING OF ORAL AGREEMENT SUBSEQUENT TO WRITTEN CONTRACT OF SALE OF LAND. In an action for specific performance to compel conveyance to plaintiff of east one-half of land rather than an undivided one-half as tenant in common, evidence *held* to sustain a finding that parol agreement to convey east one-half of land in question was made subsequent to written contract of sale.

3. VENDOR AND PURCHASER—IMPROVEMENTS HELD TO CONSTITUTE CONSIDERATION FOR PAROL AGREEMENT SUBSEQUENT TO WRITTEN CONTRACT FOR SALE OF LAND. Parol agreement, made subsequent to written contract for sale of land, *held* sufficiently supported by consideration, where improvements made by vendee at ven-

dor's assent and promise to convey, such improvements enhancing value of adjacent property.

4. SPECIFIC PERFORMANCE—EVIDENCE HELD TO SUSTAIN FINDING THAT VENDEE MADE IMPROVEMENTS IN RELIANCE ON PAROL AGREEMENT. In action for specific performance of parol agreement to convey specific one-half of land rather than undivided one-half under written contract, finding that vendee made improvements in reliance on parol agreement *held* supported by preponderance of evidence.

5. SPECIFIC PERFORMANCE—FACTS HELD TO SHOW RELATIONSHIP OF VENDOR AND VENDEE RATHER THAN TENANTS IN COMMON. In an action for specific performance of parol agreement to convey specific one-half of land rather than undivided one-half under written agreement, facts *held* to show relationship of vendor and vendee rather than tenants in common; oral agreement being clearly modification of written agreement, and mere fact that vendor paid one-half of taxes and vendee one-half was insignificant.

6. FRAUDS, STATUTE OF—POSSESSION AND IMPROVEMENT OF PART OF LAND UNDER PAROL AGREEMENT HELD PART PERFORMANCE AS TO ALL LAND COVERED BY SUCH AGREEMENT. A parol agreement to convey the east one-half of certain land, made subsequent to written agreement to convey undivided one-half was taken out of Comp. Laws 1917, §§ 5811, 5813, where land was definitely described, vendee paid purchase price, entered upon east one-half of land in reliance on parol agreement, with vendor's consent and knowledge, actually occupied a substantial portion thereof, and made substantial improvements thereon; part performance as to portion of such half of land being part performance as to entire one-half.[1]

7. SPECIFIC PERFORMANCE—SPECIFIC PERFORMANCE OF ORAL CONTRACT TO CONVEY GRANTED WHERE PARTLY PERFORMED. Where vendee, under parol contract to convey east one-half of land, made pursuant to written contract to convey undivided one-half, paid purchase price, entered upon and took possession of part of such half in reliance on parol agreement, and made substantial permanent improvements thereon he was entitled to specific performance of written contract as modified by parol agreement compelling conveyance of entire one-half of land in question.

---

[1] Distinguishing *Moon* v. *Bollwinkel*, 47 Utah, 389, 154 P. 939; *Adams* v. *Manning*, 46 Utah, 82, 148 P. 465.

8. SPECIFIC PERFORMANCE—SPECIFIC PERFORMANCE DECREED IN FAVOR OF DONEE TAKING POSSESSION AND IMPROVING LAND IN RELIANCE ON PAROL GIFT. Specific performance will be decreed even in favor of donee of parol gift of land, where gift is followed by possession and substantial improvements in reliance thereon.[2]

Appeal from District Court, First District, Box Elder County; *M. H. Harris,* Judge.

Action by Edward Hogan against D. N. Swayze and others. From a judgment for plaintiff, defendants appeal.

AFFIRMED.

*Evans & Sullivan,* of Salt Lake City, for appellants.

*D. H. Thomas,* of Salt Lake City, for respondent.

THURMAN, J.

This is an action to enforce the specific performance of a contract for the sale of land in Box Elder county, Utah. At the time of the execution of the contract, viz. on August 12, 1913, title to the land was in the Central Pacific Railroad Company, and one W. E. Whittaker had a contract with said company for the purchase of the land, which contract, together with a warranty deed from said company to Whittaker was deposited in escrow with Walker Bros. Bankers of Salt Lake City. While said escrow was pending Whittaker and his wife offered to sell their equity in said land to the de-

---

[2] *Price* v. *Lloyd,* 31 Utah, 86, 86 P. 767, L. R. A. (N. S.) 870; *Hargreaves* v. *Burton,* 59 Utah, 575, 206 P. 262, 33 A. L. R. 1481.

See Headnote 1.  22 C. J. pp. 1102, 1274.
Headnote 2.  36 Cyc. p. 784 (Anno.).
Headnote 3.  39 Cyc. p. 1352.
Headnote 4.  36 Cyc. p. 784 (Anno.).
Headnote 5.  36 Cyc. p. 784 (Anno.).
Headnote 6.  27 C. J. p. 349, 36 Cyc. p. 657.
Headnote 7.  36 Cyc. p. 657.
Headnote 8.  36 Cyc. p. 681.

fendant D. N. Swayze and one W. E. Farrier for the sum of $4,800, which price was to be reduced to $3,700 if paid on or before August 13, 1913. In order to obtain the money to avail themselves of the discount, Swayze and Farrier entered into negotiations with the plaintiff, which ripened into a contract by which plaintiff agreed to purchase a one-half interest in the land for the sum of $4,800, $3,700 of which was to pay Whittaker, the remainder to Swayze and Farrier. Swayze and Farrier were to pay the railroad company the remainder of the purchase price under its contract with Whittaker, as the same became due, and when title was secured from said company were to execute a deed to plaintiff for a one-half interest in the land. The land consists of a square section, and is described as section 31, township 13 north, range 12 west, Salt Lake meridian.

Farrier died before the commencement of this action, and is represented here by the defendant Swayze as administrator of Farrier's estate. Farrier's widow and daughter are also made defendants.

The contract between Swayze and Farrier of the first part and plaintiff of the second part, which is the subject of controversy here, was executed August 12, 1913. The contract was in writing, signed by the parties, and purports to convey an undivided one-half of said section. It is alleged by plaintiff, in his complaint, that the contract was afterwards modified by mutual agreement between himself and Swayze and Farrier, to the effect that plaintiff was to have the east half of the section and Swayze and Farrier the west half. The defendant's deny the alleged subsequent agreement. They afterwards procured title from the railroad company, and refused to convey to plaintiff the east half of the land, but offered and are still willing to deed to him an undivided one-half of the section. Defendants stand upon the written contract which reads as follows:

"Witness: That Walker Bros. Bankers, of Salt Lake City, Utah, now hold an agreement contract, and deed, covering the transfer of Sec. 31, Tp. 13 N. R. 12 W., executed by W. E. Whittaker and Emily Whittaker, his wife, to D. N. Swayze and W. E. Farrier; there being due W. E. Whittaker, his heirs and assigns certain

sums of money under the afore-mentioned agreement. And since W. E. Whittaker and Emily Whittaker, his wife, have, under supplementary agreement dated July 3, 1913, agreed to discount all sums of money, together with their interest mentioned and contained under the original or first agreement, upon the payment to their credit at Walker Bros.', Bank, Salt Lake City, Utah, the sum of thirty-seven hundred dollars ($3,700.00) on or before August 12, 1913. Now comes Edward Hogan of Park Valley Precinct, Box Elder county, Utah, to D. N. Swayze and W. F. Farrier, and agrees to purchase an undivided one-half interest in the above-mentioned section, viz. Sec. 31, Tp. 13 N. R. 12 W., for the sum of forty-eight hundred dollars ($4,800.00), and further agrees to furnish and does hereby furnish the sum of thirty-seven hundred dollars ($3,700.00) to be paid W. E. Whittaker and Emily Whittaker, his wife, for their right, title and interest as contained in original and supplementary agreement now in favor of D. N. Swayze and W. F. Farrier, and receipt of the balance of the purchase price for the undivided one-half interest, amounting to eleven hundred dollars ($1,100.00) is hereby acknowledged by D. N. Swayze and W. F. Farrier. The balance of indebtedness holden against Sec. 31, Tp. 13 N., R. 12 W., shall be paid by D. N. Swayze, and W. F. Farrier. However, in the event that Edward Hogan, as owner of an undivided one-half interest of the above-mentioned section, should elect to pay the Central Pacific contract off and acquire the discounts in connection therewith, he is hereby privileged to do so, and D. N. Swayze and W. F. Farrier hereby agree to execute a mortgage unto the said Edward Hogan for the sum paid the said Central Pacific Company, plus the discounts obtained by the said Edward Hogan. In the event that D. N. Swayze and W. F. Farrier should decide to transfer their right and interest to any one other than Edward Hogan, it is hereby agreed and understood that the section will automatically be divided by the transfer of interest from an east and west standpoint, and the east one-half will be considered as belonging unto Edward Hogan and the west one-half to the party or parties whom D. N. Swayze and W. F. Farrier may sell their interests unto."

The written contract is not in dispute. It was executed at Walker Bros.' Bank, Salt Lake City, at which time plaintiff paid the money, as stated in the contract.

The principal questions before the trial court were: (1) Was there a subsequent oral agreement to convey to plaintiff the east half of the land? (2) If there was such an agreement, was the conduct of the parties such as to avoid the statute of frauds relating to the sale of real estate?

The trial court found the issues in favor of the plaintiff, and entered judgment accordingly.   Defendants appeal.

Appellants' assignment of errors presents numerous questions for our determination.   It suits our convenience to first dispose of the principal questions above referred to.  ·

The first question is, Was there a subsequent oral agreement that plaintiff should have the east half of the land? Plaintiff, testifying in his own behalf, in substance, said that after they had executed the written contract and came out of the bank onto the sidewalk they talked about what was to be done on the place and the money to be expended on improvements; that he stated to Swayze and Farrier that he had not seen anything in the contract giving him the east half; that Farrier said, "Oh, we settled that yesterday; you go on and do this improvement and when this contract is paid out to the railroad company we will deed you the east half;" that Swayze also said, "Yes, we settled that yesterday, and you go ahead and do what you can on the land up there."   Plaintiff also testified that Swayze said they would deed him the east half when the land was paid for; that both Swayze and Farrier stated they had settled that question before.   Plaintiff further testified, in substance, that he had subsequent conversations with both Swayze and Farrier separately, and it was understood he was to have the east half of the land.

Harold Latter, son-in-law and witness for plaintiff, testified that he was present at Walker Bros.' Bank when the contract was executed.   He said they were all talking about the place up there, and plaintiff said to Swayze and Farrier that he did not see anything in the contract about his having the east half; that plaintiff said, "I thought we agreed that I was to have the east half and you was going to have that put in there;" that Farrier said, "Why I thought we settled that question last night, Mr. Hogan, and just as soon as we get this contract paid off to the railroad company, and we get the deed, it is understood that you are to get a deed for the east half," and Swayze said, "Yes; that's right." Witness also testified that plaintiff said something about how

soon he could get possession, and Farrier said that Mr. Whittaker had agreed to give possession at once; that plaintiff said he was going to do some plowing.

John Hogan, son of plaintiff, testified to helping his father raise a crop on the east half of the land, and also assisted in building and repairing fences, etc.; that while working up there he planted about an acre of potatoes over on the west half of the land; that this was in 1914; that he had some talk with Swayze about the ownership of the west half; that Swayze and Farrier were having a lawsuit with some parties over a spring that arose on the west half; that witness walked over with Swayze to look at the spring; that Swayze saw the potatoes and wanted to know what we had planted there; that witness informed him they had planted potatoes, and that Swayze said as long as he was furnishing the ground he ought to have some of the potatoes; that Swayze said he and Farrier owned the west half.

Whittaker, who formerly owned an equity in the land, sworn as a witness for plaintiff, referring to the section of land in question, testified that on one occasion, while conveying Swayze and Farrier to Rosetti to look at some land they had there, they told witness they were moving a man on the east half of the section; that they had sold Mr. Hogan the east half. The witness stated that Swayze had told him at different times that he had sold the east half to Mr. Hogan. Witness thought the conversation was in the spring of 1914. On cross-examination, witness said he asked Swayze why they did not divide the section east and west instead of north and south; that Swayze said he had sold the east half.

The foregoing is substantially all the evidence on behalf of plaintiff in support of the alleged oral agreement, except the fact that he immediately entered upon the east half of the section and commenced to cultivate and improve the same. This will be considered later on.

Defendant Swayze, testifying for the defendants denied that any agreement was entered into by which plaintiff was to have the east half of the land, and denied having made any statement to anybody to that effect.

As corroborative of Swayze's testimony defendants rely on numerous circumstances, prominent among which it is mentioned that the alleged oral agreement was made almost contemporaneously with the written agreement, and, being entirely inconsistent with it, is therefore improbable; that the taxes were assessed on the entire section as a unit, Swayze and Farrier paying one-half thereof and plaintiff the remainder; also the fact that the written contract provided for a sale of the whole section as a unit, and division of the proceeds on a basis of one-half to plaintiff and remainder to Swayze and Farrier; and, finally, that there was not sufficient evidence of part performance to take the case out of the statute of frauds.

In order to keep the evidence relating to the oral agreement separate from other matters material to the issues involved in this appeal, we have thus far avoided reference to evidence bearing upon the question of part performance of the contract.

The uncontradicted evidence shows that very soon after the contract between the parties was entered into plaintiff entered upon the east half of the land with his son, equipped with farming implements, and commenced to plow and cultivate the land. There was a three-room log house, a barn, blacksmith shop, and some fence around the place all of which were out of repair. The house had a dirt roof; the inside walls were bare. Plaintiff put a new roof on the house, and "chinked" it up with lime and sand, and got it in shape to live in. He also put a new roof on the blacksmith shop and on the barn and sheds for his horses and cows, so as to take care of them through the winter. There were 10 or 12 acres of the land which had been cultivated before. Plaintiff plowed the land, bought seed, and planted rye. This was in the fall of 1913. He lived there that winter. As soon as snow was off the next spring they went to work to clear off more land, broke down sage brush, raked it up, pulled up tree stumps, and burned the brush. They cleared 14¾ acres, and hired a man to plow the land, planted it in barley, and harvested the crop. While the hired man

was doing this work, plaintiff and his son were cleaning up some other small patches of ground in order to "straighten it up." They cleared about 2 acres and put it in grain. They cleared and plowed around the barn and hay, as a protection against fire. That fall plaintiff put two other men on the place. The next year they plowed and cropped the land. During 1914 plaintiff and his hired man moved and straightened up some fences so as to inclose the land he had cleared and intended to crop. All of the fence was on the east half of the section. The amount of land inclosed was 40 or 45 acres. That was all of the fencing done, except for some corrals. It was a barbed wire fence with cedar posts, most all new. Plaintiff thought the fence cost over $200. The cost of clearing and plowing the land was $14 an acre. About 3 more acres were cleared and broken up by the two men he employed. They were there also in 1916 and 1917, raised crops, and kept up the place. In all about 35 acres were cultivated. Plaintiff testified that he had paid out all of $1,000, exclusive of the price of machinery and other personal property, and that, if he figured in wages for himself and son, it would be more than $1,000. Plaintiff said the improvements were made in reliance upon the promise of Swayze and Farrier that when they got their deed they would deed to him the east half of the section.

The foregoing statement of the evidence contains substantially all that was offered by the parties litigant in support of the issues tried by the court below.

It was strenuously contended by appellants at the trial that the oral agreement was inadmissible as being an attempt to alter the terms of a written agreement by parol evidence. Objection was made to its admissibility on that ground. The court overruled the objection, and appellants assign the ruling as error.

It is true that the alleged oral agreement was, in point of time, closely connected with the execution of the written contract. It was, nevertheless, subsequent thereto, for, if made at all, as far as appears from the evidence admitted, it was made after the written contract was completely exe-

cuted by signing the same and payment of the stipulated price. In Elliott on Contracts, vol. 2 § 1640, it is said:

"If the parol contract was, in fact, made subsequent to the written contract, and evidence thereof is otherwise unobjectionable, it makes no difference how short the interval may have been."

This proposition ought not to be seriously questioned. It may be said in passing, however that the rule that parol evidence is inadmissible to vary the terms of a plain, unambiguous instrument, in writing, is elementary in this and every other jurisidiction of the country. Consequently it is not necessary to cite the authorities relied on by appellants. Such authorities apply only to prior or contemporaneous agreements, and not to agreements subsequently made. Prior or contemporaneous agreements are held to be merged in the written contract, and therefore not admissible in evidence.

As to whether or not there was a subsequent parol agreement to convey to plaintiff the east half of the land, as contended by plaintiff, we are constrained to hold, as did the trial court, that the evidence clearly preponderates in favor of the plaintiff. It would serve no beneficial purpose to review the evidence. We have set it out, in substance, and, in our opinion, the trial court was justified in the conclusion reached.

Appellants also assign as error the admission of the parol agreement in evidence, upon the ground that it violates Comp. Laws Utah 1917, §§ 5811 and 5813, commonly referred to as the statute of frauds.

Whether the acts and conduct of the plaintiff in the instant case amounted to a part performance of the contract, as required by law in cases of this kind, is the most important question to be determined.

Appellants insist there is no evidence to show a part performance of the contract. It is not strenuously contended that the improvements made by plaintiff upon the land were not permanent, or that they were not of sufficient value to satisfy the law, but it is contended that what was done upon the land was as a tenant in common, with the consent

and acquiescence of all the parties to the written contract; that the taxes were paid by all the parties upon the entire section as a unit; that everything done by the plaintiff on the land was consistent with a tenancy in common; and that plaintiff did not discharge the burden of proof resting upon him by merely showing that he entered into physical possession of a partciular portion of the land.   Furthermore, appellants make the points that plaintiff had the written contract recorded after the alleged oral agreement, that there was no consideration for it, and that the improvements must have been made in reliance upon its fulfillment.

The last three points will be first considered.   The recording of the contract by plaintiff after the oral agreement has no probative effect against plaintiff's contention.   The oral agreement purports to be nothing more than a modification of one feature of the written contract.   Both the written agreement and the oral agreement are necessary to constitute the contract upon which plaintiff founded his right of action. The oral agreement does not even describe the land which is the subject of the action.   In 2 Elliott on Contracts, § 1640, the author says:

"A new and distinct agreement, based on a new consideration, may usually be shown by parol evidence, either as a substitute for the old agreement, or in addition to it; and it is a general rule that an executory bilateral written contract, nor under seal, may, before breach thereof, be waived or annulled, modified or varied, by a new valid parol contract, even though it is to be taken in connection with the written agreement and proved partly by the writing, and partly by the new parol terms, provided the statute of frauds does not require it to be entirely in writing."

As to the consideration for the oral agreement, the writer is of opinion it is sustainable on more grounds than one.   In the first place, at the time the oral agreement was made, it appears the plaintiff desired to make some improvements on the land, that he called attention to the fact that the written contract said nothing about his having the east half, and that Swayze and Farrier told him, in effect, to go on and do the work, and when they received title     3, 4 from the railroad company they would deed him the

east half, in the second place, it must be conceded that any permanent improvements, such as buildings, fences, clearings, and cultivation, made upon any one portion of a tract of wild land, will enhance, to some extent, the value of adjacent land. We are of opinion there was ample consideration for the oral agreement. As to the last of the three points above mentioned, plaintiff expressly testified he made the improvements upon reliance that the agreement would be fulfilled. The trial court specifically found that plaintiff made the improvements upon such reliance, and we are of opinion the finding is sustained by a preponderance of the evidence.

We readily concede that, where a tenant in common enters upon a tract of land owned by himself and his cotenants, and cultivates the same and makes improvements thereon, there is a presumption that such acts are for the benefit of all the tenants in common, and his actual occupation and improvement of a part of the land in such case afford no presumption of his exclusive ownership of the portion so occupied and improved. But under the facts of this case the relationship of the parties appears to have been that of vendors and vendee rather than that of tenants in common. The oral agreement of the parties was clearly a modification of the written agreement, to the effect that plaintiff became the purchaser of the east half of the land.

The fact that the annual taxes were paid, one-half by defendants and the other half by plaintiff, is of but little significance. The contract with the railroad company was in the name of the defendants, and no doubt the taxes were assessed against them until the title was perfected. In view of all the circumstances of the case, the part played by plaintiff in furnishing the money to take up the Whittaker option, together with the profits made by defendants in the deal it is not at all significant that the taxes were apportioned in the manner stated until the contract should finally ripen into a complete title.

But defendants contend there was not a part performance of the contract, because plaintiff did not enter into physical possession of all the east half of the section.

It certainly cannot be seriously contended that plaintiff was required either to fence all the land or cultivate every foot of it, for that would be to apply the rule of pedis possessio, which can have no just application in a case of this kind. It is impracticable, if not impossible, for a person claiming to own one or more parcels of land of any considerable area to improve and cultivate it all at once, or even enter into actual possession and occupancy thereof. This proposition is recognized by many authorities, and has been applied in numerous actions for specific performance in which the statute of frauds was relied on as a defense. The rule has even been maintained in cases where several parcels of land are included in the contract. The possession of one parcel carries with it possession of all.

In *Bartz, v. Paff et al.*, 95 Wis. 95, 69 N. W. 297, 37 L. R. A. 848, the second headnote states the rule:

"Where several parcels of land are included in one parol contract of sale, part payment of the purchase money and a delivery of possession of one of those parcels, is sufficient to enable the purchaser to enforce specific performance of the contract as to all the parcels."

*Tillis et al.* v. *Folmar*, 145 Ala. 176, 39 So. 913, 8 Ann. Cas. 78, 117 Am. St. Rep. 31, is also in point. The note at the close of the case is especially enlightening. It reads in part, as follows:

"The holding in the reported case is in accord with the general rule that when a purchaser has entered into possession of one of several distinct parcels of real estate, all of which have been purchased under an entire parol contract and for a sum in gross, there is such a part performance of the contract of sale as to require its enforcement in equity notwithstanding the statute of frauds. *Bigelow* v. *Armes*, 108 U. S. 10, 1 U. S. Sup. Ct. Rep. 83; *Metropolitan Lumber Co.* v. *Lake Superior Ship Canal, Etc., Co.*, 101 Mich. 577, 60 N. W. 278; *Hitchins* v. *Pettingill*, 58 N. H. 386; *Smith* v. *Underdunck*, 1 Sandf. Ch. (N. Y.) 579. See, also, *Bartz* v. *Paff*, 95 Wis. 95, 69 N. W. 297. In *Jones* v. *Pease*, 21 Wis. 652, the court said: 'It is however contended by the appellant that the contract is not taken out of the statute unless possession is delivered to the purchaser under the contract of all the real estate. It appears to us that this position is untenable. As we said before, the contract

must as a whole be enforced, or entirely rescinded; and we see less difficulty in fully carrying into effect the agreement of the parties, than in undoing what they have done. And we do not think, when a party agrees by parol to convey different parcels of land, that possession of each parcel under the contract is necessary to take it out of the statute. If it is, then possession may be given of the most valuable portion of the lands, and the purchase money all be paid, and yet the purchaser be turned out of possession of the very lands he has taken possession of under the contract, by an action of ejectment, and compelled to pay for their use and occupation, and be left to an action at law to recover the purchase money paid.' Where the purchaser divides the land into parcels and sells one parcel to a third party, the possession thereof by such third party, it seems, inures to the benefit of the purchaser and becomes part performance of the entire contract. *Blalock* v. *Waggoner*, 82 Ga. 122, 8 S. E. 48."

If such is the rule in the cases referred to, when several parcels of land are covered by a parol contract, for a much stronger reason it ought to be the rule where only one parcel of land is in controversy, as in the instant case. The land is definitely described in the contract; there is no uncertainty as to that. The plaintiff, as hereinbefore found, entered upon the land claimed by him in pursuance of and in reliance upon the contract, and actually occupied a substantial portion thereof, and made permanent and valuable improvements thereon. These facts clearly distinguish this case from the cases of *Adams* v. *Manning,* 46 Utah, 82, 148 P. 465, and *Moon* v. *Bollwinkel*, 47 Utah, 389, 154 P. 939, cited and relied on by appellants. A casual reading of the cases, without further comment, will clearly show the distinction.

The written contract, as modified by the oral agreement is definite, certain, and specific in all its terms. It constitutes a valid contract for the purchase of the east half of the land in question. Plaintiff paid the full purchase price, and with the knowledge and consent of the vendors entered into possession and made valuable improvements thereon. It nowhere appears in the evidence that the land had any rental value, or that plaintiff derived any benefit therefrom.

The only question remaining to be determined is one of law. Under the facts and circumstances above set forth, is plaintiff, in equity, entitled to a decree en-        7

forcing a specific performance of the contract? The
following general statement of the doctrine is found in
Pomeroy on Contracts (2d. Ed.) § 126:

"The making of valuable permanent improvements on the land
by a vendee or lessee, in pursuance of the agreement, and with the
knowledge of the other party, is always considered to be the strong-
est and most unequivocal act of part performance by which a verbal
contract to sell and convey, or to lease, is taken out of the statute.
It is very plain that such proceedings satisfy the equitable principle
upon which the doctrine of part performance rests, much more
completely than a mere possession does. If the purchaser has sim-
ply taken possession, it might seem possible for him to be restored
to his former situation; but, when he has made outlays for valua-
ble and permanent improvements, and thus changed the character
of the property, it would be in the highest degree unjust for the
owner, who has permitted these expenditures and alterations to be
made in reliance upon the agreement, to interpose the statute and
prevent the completion of his contract, and at the same time re-
tain and enjoy all the benefit of the additional value imparted
to his land. For these reasons, the courts have never hesitated to
assert and enforce the rule as above stated."

In 36 Cyc. at page 656, the author states the rule as
follows:

"Possession taken in pursuance of the contract and payment of
the purchase price in full or in part, followed by valuable improve-
ments, together constitute a part performance which is recognized
as sufficient whenever the doctrine is not wholly rejected."

Even in the case of a parol gift of land, followed by pos-
session and valuable permanent improvements by the donee,
in reliance upon the gift, specific performance will be en-
forced.    25 R. C. L. p. 279; 36 Cyc. 681; Pomeroy on Con-
tracts, supra, § 130.

The rule above stated prevails in nearly every jurisdiction
of the country.    The exceptions, as stated by Cyc,
supra, in the note at page 658, are Massachusetts,          8
Pennsylvania, and probably Virginia.    See, also, *Price
v. Lloyd*, 31 Utah, 86, 86 P. 767, L. R. A. (N. S.) 870,
*Hargreaves* v. *Burton*, 59 Utah, 575, 206 P. 262, 33 A. L. R.
1481, and exhaustive notes commencing on page 1489.

While in each of the Utah cases specfic performance was
denied, yet the law as to what constitutes part performance

is clearly stated. The note to A. L. R. supra, is exhaustive, and appears to cover the whole field of the law applicable to the instant case.

Under all of the authorities above cited, which also reflect the great and overwhelming weight of authority, both in this country and in England, in this class of cases, the plaintiff herein is clearly entitled to the relief prayed for in his complaint.

The judgment of the trial court is therefore affirmed, at appellants' costs.

GIDEON, C. J., and FRICK, CHERRY, and STRAUP, JJ., concur.