## MILLER v. HANCOCK et al.

No. 4398.   Decided May 29, 1926.   Rehearing Denied June 14, 1926
(246 P. 949)

1. FRAUDS, STATUTE OF.   Written instrument containing offer to exchange realty, in absence of evidence explaining its ambiguities, *held* too indefinite and uncertain to satisfy statute.

2. FRAUDS, STATUTE OF—WRITTEN OFFER, AS MODIFIED BY DEEDS OF PARTIES SUBSEQUENTLY EXECUTED, HELD TO ESTABLISH VALID AGREEMENT IN WRITING FOR EXCHANGE OF PROPERTIES IN QUESTION WHICH WAS ACCEPTED BEFORE WITHDRAWAL.   Written instrument, containing offer to exchange properties as modified by deeds of both parties subsequently executed, *held* to show a valid agreement in writing for exchange of properties in question which was accepted before being withdrawn.[1]

3. FRAUDS, STATUTE OF.   Several writings may be construed together as containing all the terms of a contract, though only one be signed by the party to be charged.

4. PLEADING.   Issues not raised by pleading should not be injected into trial of case except by common consent, and even then pleadings should be amended.

Appeal from District Court, Third District, Salt Lake County; *M. L. Ritchie*, Judge.

Action by John L. Miller against William J. Hancock and others.   Judgment for plaintiff and the defendant named and another appeal.

AFFIRMED.

*Young, Boyle & Moyle* and *Feramorz T. Little*, both of Salt Lake City, for appellants.

[1] *Hogan* v. *Swayze*, 65 Utah 380, 237 P. 1097.

Corpus Juris-Cyc. References:
[1]   Frauds, Statute of 27 C. J. p. 269 n. 72.
[2]   Frauds, Statute of 27 C. J. p. 261 n. 59 New.
[3]   Frauds, Statute of 27 C. J. p. 259 n. 52.
[4]   Pleading, 31 Cyc. p. 680 n. 69.

Appeal from Third District

*Dan B. Shields,* of Salt Lake City, for respondent.

THURMAN, J.

Plaintiff instituted this action to enforce the specific performance of an alleged contract for the exchange of certain real property situate in Salt Lake City, Utah. Defendants deny there was any contract for the exchange of the property and allege that any pretended contract is barred by the statute of frauds.

For a definite understanding of the issues, it is necessary to quote the complaint at length:

"Plaintiff complains and alleges:

"I. That at all times hereinafter mentioned plaintiff was the owner of that certain property in Salt Lake City, Salt Lake county, Utah, described as follows: Lot 24 Clearview addition, and described as 1936 Lake street, Salt Lake City, Utah. And defendants William J. Hancock and Lily Hancock were the owners of the following described property: All of lot 40 and the E. 12 feet of lot 41, block 1, Lincoln Park, a subdivision of block 16 A, Five-Acre Plat A, and particularly known and described as No. 1150 Emerson Avenue, also lots 46 and 47, block 1, Benton Place, all in Salt Lake City, Salt Lake county, Utah.

"II. That on or about July 10, 1925, plaintiff and defendants entered into a contract of exchange by the terms of which plaintiff sold to defendants Wm. J. Hancock and Lily Hancock that certain real property heretofore described, subject to a mortgage of $3,500, and in payment of said property defendants sold and transferred to plaintiff their certain property heretofore described as their property, and in addition agreed to pay the sum of $500 in cash.

"That to secure the transfer here agreed and to guarantee the cash payment of $500, plaintiff and defendants each executed deeds of conveyance to their properties to the respective parties to effectuate the exchange agreed upon and placed the said deeds in escrow with defendant Le Grande Backman for delivery.

"III. That it was understood and agreed by and between the parties hereto that the defendants would procure said $500 to be paid to plaintiff by placing a loan on the property conveyed to defendants by plaintiff, and that upon the completion of said loan and the payment of $500 of the proceeds thereof to plaintiff, the escrow holder,

defendant Le Grande Backman was to release the deeds to the parties named as granted therein.

"IV. Pursuant to the foregoing agreement and understanding, plaintiff executed his deed in favor of defendants, and defendants executed their deed in favor of plaintiff, and each delivered said deeds to said escrow holder for the grantees named in said deed, and immediately thereafter defendants went into possession of said property.

"That in further pursuance of the terms of said agreement, application was made for a loan in behalf of defendants Wm. J. Hancock and Lily Hancock to the Zion's Benefit Building Society in the sum of $4,000, and said loan was approved by said Zion's Benefit Building Society subject to the execution of proper evidences thereof by defendants Wm. J. Hancock and Lily Hancock on the 3rd day of August, 1925, and defendants notified of such approvals and requested to appear and execute the necessary loan instruments on said day.

"V. That thereafter, on August 3, 1925, defendants attempted to repudiate their said agreements, refused to pay plaintiff said $500, and instructed said defendant Le Grande Backman not to deliver said deeds to plaintiff, and still refuse to perform the terms of their contract.

"VI. That the defendant Le Grande Backman is made a party to this action for the reason only that he is the escrow holder designated and that he may be in court for the purpose of receiving instructions from the court as to compliance with the contract. And the plaintiff hereby expressly waives all costs and expenses of suit as against him."

Plaintiff prays for specific performance including payment to him of $500, and pending payment that he be given a lien on the property conveyed by him to defendants.

Defendants, jointly answering, in substance, admit the ownership of the property as alleged in paragraph 1 of the complaint and deny the remaniing allegations thereof. They deny the allegations in paragraphs 2, 3, 4, and 5, except that they admit they refused to convey their said property to the plaintiff and advised the said Le Grande Backman of their refusal. For a further defense they allege that on or about the 10th day of July, 1925, they signed a certain document, which they attach to their answer as Exhibit 1; that they executed two deeds conveying their said property in which

deeds plaintiff was named as grantee; that the said documents were delievered to a representative of the A. Richter Company for the sole purpose of safe-keeping, and not otherwise; that defendants did not know that the possession of said documents had been delivered to the escrow holder mentioned until on or about August 1, 1925; that defendants were not notified of any acceptance of any deal wherein they were connected with the plaintiff; that plaintiff never signed Exhibit 1; that it was upon those terms only, and upon plaintiff becoming bound thereby, that the defendants were willing to consummate a deal with the plaintiff; that plaintiff never indicated to defendants his desire to consummate said deal, or any deal, with them; that neither they nor their representative have received any consideration from plaintiff or any one else for or on behalf of plaintiff with reference to the subject matter of the action; that there was no second party to said exhibit and no payment of $1 by each of the parties to the other, and that defendants would not have dealt with plaintiff except in writing; that on or about August 1, 1925, defendants were notified that a loan had been approved by Zion's Benefit Building Society and defendants were requested to appear August 3d to execute certain papers in connection therewith; that they, not having been advised of any deal pending with plaintiff, employed their counsel to investigate the matter and, when advised of the circumstances, served on plaintiff and other parties notice of withdrawal. Defendants also plead the statute of frauds and deny that at any time they authorized any person to apply to Zion's Benefit Society for a loan, or to any other person.

Exhibit 1, attached to defendants' answer, reads as follows:

"Whereas W. J. Hancock and Lily Hancock, party of the first part is the owner of the following tract of land in Salt Lake City, county of Salt Lake, state of Utah, to wit: 1150 Emerson, lot 40, block 1, E. 12 ft. of lot 41, block 1, house cost $2,650, seller to have 60 days refusal to sell above-described property and all over $2,650 to be re-

tained by seller. Lots to sell at $350 and pay $4,000 cash as soon as loan could be arranged through building loan for property at 1936 Lake, making a total of $7,000.

"And whereas, John Miller, party of the second part, is the owner of the following described tract of land in Salt Lake, county of Salt Lake, state of Utah, to wit: 1936 Lake street, where the said seller of property located on Lake street agrees to guarantee plumbing fixtures and furnace to be in good condition, price to be $7,000.

"And whereas the said parties have been brought together by the said A. Richter Company or their agent, and are desirous of exchanging their said properties:

"Now therefore, in consideration of one dollar each to the other in hand paid receipt of which is hereby acknowledged and the mutual promises of the parties hereto it is agreed as follows:

"The party of the first part will transfer by warranty deed a good marketable title to the property first above described to the party of the second part.

"The party of the second part will transfer by warranty deed a good and marketable title to the property second above described to the party of the first part.

"For the services rendered by the said A. Richter Company, or their agent, the sum of $————, and the party of the second part also agree to pay to the A. Richter Company, or their agent, the sum of $———— for services rendered.

"Dated at Salt Lake City, this———— day of ————, 1925.

"Lily Hancock,
"Wm. J. Hancock,
        "Party of the First Part.
"————————,
        "Party of Second Part.
"Witness: ————————."

The cause was tried to the court without a jury. The court found the issues in favor of the plaintiff and made findings substantially in conformity with the language of the complaint. The court also found that the deal was subject to prorating of taxes on the property of both plaintiff and defendants for the year 1925. Conclusions of law and judgment were entered in accordance with the findings. Defendants Hancock appeal.

The record of the evidence is more or less choppy and fragmentary. There are several breaks in the testimony of

witnesses caused by interruptions, and they are not always connected so as to make the meaning clear and definite. Much immaterial evidence, entirely outside the issues raised by the pleadings, was admitted pro forma, over the objection of counsel. This tended to incumber and confuse the record and render it more difficult to ascertain its meaning. Notwithstanding these handicaps, after a careful reading of the transcript, some parts of it many times over, we find that the following facts are either undisputed or established by a preponderance of the evidence: That plaintiff in the early part of July, 1925, listed for sale with the real estate board of Salt Lake City, of which A. Richter Company was a member, his property described in the complaint; that within a few days thereafter plaintiff was informed by a representative of the board that he had found a buyer for plaintiff's property and at the same time exhibited a paper signed by the defendants Hancock and wife, containing a proposition for an exchange of defendants' property for plaintiff's upon the conditions therein named. This document is attached to defendants' answer and marked as Exhibit 1. It is referred to in the evidence sometimes as Exhibit 1 and sometimes as Exhibit 4. To avoid confusion, it will hereinafter be referred to as Exhibit 4. Plaintiff informed the representative of the board that he was not willing to sign the paper, as it was too indefinite, but he would accept the proposition provided the deal was closed up at once, as he had another deal pending which he did not want to lose if this one failed. Besides, he wanted to rid himself of further care of his property. Thereupon warranty deeds were prepared, one conveying plaintiff's property to defendants, subject to a mortgage thereon of $3,500, and two deeds from defendants to plaintiff, one for the house and lots upon which it was situated, and the other for two lots. These deeds, with an abstract of title to plaintiff's property, on July 14, 1925, were taken to defendants' home by plaintiff and a Mr. Butterworth, representative of the real estate board. Plaintiff informed defendants he would accept the proposition they had made, but he desired

the deal closed without delay, assigning therefor the reasons above stated. As the deal contemplated a loan on plaintiff's property of $4,000, to pay off the mortgage, plaintiff said he would take his chances on the loan being approved and was willing to execute a deed for his property subject to the loan being approved. Defendant Wm. J. Hancock then asked his wife what she thought about it. She said: "Well, you want the house, don't you?" He said, "Yes." She said "Then let's sign." The deeds were then signed by both of the defendants. The deeds of both plaintiff and defendants, with the consent of all parties, were placed in the hands of Butterworth with instructions to procure the loan for $4,000, $3,500 of which was to pay off the mortgage, the remaining $500 to be paid plaintiff, as balance due him on the exchange. The papers were delivered by Butterworth to Le Grande Backman, attorney for Zion's Benefit Building Society, who testified that they were delivered to him upon the understanding that upon making the loan the deeds were to be delivered to the respective grantees. The loan was approved by the building society, and the defendants were notified to execute the necessary papers therefor. They refused to do so, the reason assigned by the defendant Wm. J. Hancock being that he had another obligation to meet which prevented him form going through with the deal. No other reason was given before the commencement of this action for defendants' refusal to complete the transaction. Backman testified that he had the papers and was willing to deliver them when ordered by the court. The evidence further shows that after the deeds were executed and delivered to Butterworth plaintiff gave his keys to the defendant Wm. J. Hancock, and that Hancock for some two weeks thereafter "watered the lawns and other things," on plaintiff's place, and informed a boy whom plaintiff had employed to do that work that he need not continue longer; that he (Hancock) would do it, as he was going to move there in a few days. Plaintiff treated this conduct as taking possession of the property. Defendants' explanation is that he did not have

much to do at that time, and that he just did it for plaintiff's accommodation.

The above are the principal features of the case, material to the issues raised by the pleadings.

Defendants' principal contentions are that Exhibit 4 was never signed by the plaintiff, and therefore never became a binding contract, nor did plaintiff carry out the provisions thereof; that because Exhibit 4 was not signed by plaintiff, it was therefore not accepted by him, and, consequently, there was no mutuality; that because Exhibit 4 was not signed by plaintiff defendants had the right to withdraw the offer.

If plaintiff's right of action depended solely upon Exhibit 4 as the agreement for exchange, without the admission of parol or other evidence to explain ambiguities, it would not be a compliance with the statute of frauds; not because it was not signed by plaintiff, nor because it was defective in failing to show mutuality, but because standing alone it is too indefinite and uncertain in its terms to constitute a binding contract. For that very reason plaintiff did not sign it, but as it was explained to him he was willing to accept it if the transaction was consummated without delay. In pursuance of that idea, deeds were prepared for an exchange of their properties. These were submitted to the defendants, together with plaintiff's abstract of title, resulting in a formal execution and delivery of the deeds, as hereinbefore stated. Defendants' deed to the lots upon which the house was situated appears in the evidence as Exhibit 1; the deeds to the separate lots as Exhibit 2; and plaintiff's deed to defendants, as Exhibit 3. As the deeds are in short form, we quote them in this connection, in the order above stated, so that the entire documentary evidence relied on as constituting the contract in writing may appear in this opinion.

"No. 1. William J. Hancock and Lily Hancock, his wife, grantors, of Salt Lake City, Salt Lake county, state of Utah, hereby convey and warrant to John L. Miller of Salt Lake City, Salt Lake county,

Utah, grantee, for the sum of ten and no/100 dollars, the following described tract of land in Salt Lake county, state of Utah: All of lot 40, and east 12 feet of lot 41, block 1, Lincoln Park, a subdivision of part of block '16-A,' Five-Acre Plat 'A,' Big Field Survey. Taxes for the year 1925 to be prorated.

"Witness the hands of said grantors this 14th day of July, A. D. one thousand nine hundred twenty-five.

"William Hancock,
"Lily Hancock.

"Signed in the presence of."


"No. 2.    William J. Hancock and Lily Hancock, his wife, grantors, of Salt Lake City, county of Salt Lake, state of Utah, hereby convey and warrant to John L. Miller, grantee, of Salt Lake City, Salt Lake county, Utah, for the sum of ten and no/100 dollars, the following described tract of land in Salt Lake county, state of Utah. Lots 46 and 47, block one (1) Burton Place, a subdivision of lots 5 and 14, and part of lots 6 and 13, block 40, Ten-Acre Plat 'A,' Big Field Survey. Taxes for the year 1925 to be prorated.

"Witness the hands of said grantors this 14th day of July, A. D. one thousand nine hundred twenty-five.

"William J. Hancock,
"Lily Hancock.

"Signed in the presence of."


"No. 3.    John L. Miller and Geneva A. Miller, his wife, grantors, of Salt Lake City, county of Salt Lake, state of Utah, hereby convey and warrant to William J. Hancock, grantee, of the same place, for the sum of ten and no/100 dollars, the following described tract of land in Salt Lake county, state of Utah:

"All of lot 24, block 2, Clearview subdivision, according to the official plat thereof now on file and of record in the office of the county recorder of Salt Lake county, Utah.

"Subject to pro rata portion of 1925 general taxes.

"Subject to mortgage in the sum of $3,500 favor of Ashton-Jenkins Company.

"Witness, the hands of said grantors this fourteenth day of July, A. D. 1925.

"John L. Miller,
"Geneva A. Miller.

"Signed in the presence of A. Blair Richardson."

By comparing Exhibits 1, 2, and 3 with Exhibit 4, it will be noted that the scrivener, instead of giving the street numbers as in Exhibit 4, purports to give the number of the lot as the same appears on the official plat, but no objection to this is made in the pleadings. It is not contended, either in the pleadings or in the evidence, that the property described in the deeds is different from that described in the pleadings, even though the description may be different. In any event, it seems to the court that in view of the fact that the plaintiff declined to sign Exhibit 4, because it was indefinite, and insisted upon an immediate consummation of the deal by an exchange of deeds, the deeds when executed, being the last expression of the parties, must be treated as a modification of any proposition that had been made before. This view disposes of practically every question urged in appellants' brief. All of these documents must be considered together as constituting one transaction. Viewed in that light, we find that Exhibit 4 is an offer to exchange defendants' property for plaintiff's, on the basis of $3,000 for defendants' property and $7,000 for plaintiff's. The difference in value is $4,000, and for that amount Exhibit 4 contemplates a loan on plaintiff's property. Instead of defendants being required to pay $4,000 to plaintiff in cash, $3,500 is to be applied in discharging the mortgage on plaintiff's property, leaving $500 to be paid to plaintiff to close up the deal.

It is hardly necessary to resort to parol evidence to clarify ambiguities. Neither of the exhibits specify the particular loan company through which the loan was to be made, but the evidence by a strong preponderance clearly shows that defendants expressed a decided preference for Zion's Benefit Building Society as the company through which the loan should be made. The deeds and papers were delivered to Backman, attorney for that company, for the purpose of bringing about the consummation of the loan, and when made to deliver the deeds to the respective grantees.

Defendants endeavor to make some point on that feature of Exhibit 4, which provides that the seller has 60 days' refusal in which to sell the house for $2,650, the seller to retain all over that amount. Assuming that the word "seller" means the defendants, as contended by them in their brief, there are nevertheless several complete answers to defendants' contention, any one of which is conclusive: (1) There is no pleading on the part of defendants presenting such issue or tending to show that defendants relied thereon; (2) the deeds of defendants to plaintiff contain no reservation relating to that question; and (3) the plaintiff declined to sign Exhibit 4 or accept the offer made by defendants in said exhibit except on the condition that the deal be consummated immediately, and that condition was expressly made known to defendants by plaintiff and Butterworth before defendants signed the deeds.

Considered from all points of view, the court is of opinion there was a valid agreement in writing between plaintiff and defendants for the exchange of the properties in question, and that such agreement is not obnoxious to any provision of the statute of frauds.        2

Defendants refer the court to Page on Contracts, vol. 1, p. 178, which reads as follows:

"An offer which is not an offer for value and not under seal may be withdrawn at any time before it has been accepted and cannot after withdrawal be accepted as to make a binding contract."

The offer in the instant case as modified by the parties by the execution of warranty deeds in exchange was accepted by the plaintiff before the offer was withdrawn. The authority relied on has no application. Defendants also cite the same authority, at page 1193, to the effect that where the contract is oral and the deed is deposited under an oral escrow agreement, it is not a compliance with the statute of frauds. This citation is likewise without application for the reasons already stated. Many other cases are referred to in appellants' brief relating to questions arising under the stat-

ute of frauds, among them *Hogan* v. *Swayze,* 65 Utah, 380, 237 P. 1097. The case referred to is cited for the purpose of showing that the possession given by plaintiff to defendants, as shown by the evidence, was not a sufficient part performance to take the case out of the statute of frauds. It is sufficient to say that this is not a case in which part performance by taking possession is required because here the agreement was in writing. The possession taken by defendants in this case does, however, tend to show that the deeds were made in good faith and with the intention at that time of completing the transaction with full knowledge of its intent and purpose. But *Hogan* v. *Swayze,* supra, is clear-cut authority for the proposition that an agreement in writing to convey real estate may be modified by an oral agreement which changes the scope and meaning of the written agreement. It is not necessary to refer to the other cases cited, for they have no application whatever to the facts of the instant case.

Respondent cites cases to the effect that separate writings may be construed together as containing all the terms of a contract, though only one be signed by the party to be charged: *Schneider* v. *Anderson,* 75 Kan. 11, 88 P. 525, 121 Am. St. Rep. 356; *Barnes* v. *Hunt,* 73 Okl. 92. 175 P. 215; *Arnett* v. *Wescott,* 107 Kan. 693, 193 P. 377; *M. W. Grocery Co.* v. *Carroll,* 105 Okl. 56, 231 P. 1084; *Beckwith* v. *Clark,* 188 F. 171, 110 C. C. A. 207; *Wiley* v. *Hellen,* et al., 83 Kan. 544, 112 P. 158. The doctrine of these cases is well-nigh elementary. It is at least supported by the great weight of judicial opinion.

Before concluding, lest it be contended that something has been overlooked, there are one or two points urged by appellants to which we will refer. It is contended that Exhibit 3, plaintiff's deed to defendants, does not guarantee the plumbing fixtures and furnace to be in good condition, as provided in Exhibit 4. No such issue is presented in defendants' answer, and if it be contended that Exhibit 4 was pleaded by defendants, then it may be added

the answer does not allege that the plumbing fixtures, etc., are not as guaranteed. Besides this, Exhibit 3 was accepted by defendants without objection and modifies the provisions of Exhibit 4 wherever there is a substantial conflict. Objection is also made that Exhibit 3 describes plaintiff's property as lot 24, block 2, Clearview subdivision, etc. The contention is made that "there is no 'block 2' in Clearview subdivision." If there is no block 2, and that is the only objection, it is not made to appear that any one could be misled thereby. If there is only one block in the subdivision, the words "block 2" are mere surplusage and in no sense misleading. Defendants accepted Exhibit 3 without question. This feature was not made an issue in the pleadings. No complaint was made of misdescription, and for aught this court knows the description as given in Exhibit 3 may be correct. Issues not raised by the pleadings should not be injected into the trial of a case except by common consent, and even in such cases it would be more orderly and regular to amend the pleadings so that the allegata and the probata will correspond.

We find no prejudicial error in the record.

The judgment of the trial court is affirmed, at appellants' costs.

GIDEON, C. J., and FRICK, CHERRY, and STRAUP, JJ., concur.