261 P.2d 952

MATHIS et al. v. MADSEN et al.

No. 7900.

Supreme Court of Utah.

Oct. 16, 1953.

J. D. Skeen, Salt Lake City, for appellants.

Moyle & Moyle, Salt Lake City, for respondents.

WOLFE, Chief Justice.

Initially this was an action to quiet title to land against the claims of the several defendants who filed separate answers, with defendants Ferrell and Madsen filing separate counterclaims. The respective positions and allegations of the parties will appear as the facts develop; however, in order to present a true perspective of the cause, a crucial stipulation must be mentioned at the outset. Realizing that the title to the property involved was in a state of confusion, the parties entered into a stipulation for the purpose of clearing title to the property, and permitting a sale with the proceeds to be placed in escrow. Hence, this is no longer an action to quiet title but one to determine the interest of the parties in the escrow funds arising from the sale. The stipulation will be later referred to as the issues are developed.

Judge William Stanley Dunford of the Fourth Judicial District who tried the case wrote a very helpful memorandum decision in which he concluded that the plaintiffs were entitled to judgment. The defendants contend that the findings of fact of the trial court are not supported by the evidence. After a careful reading of the entire record we conclude that the findings are supported by competent evidence. From time to time as necessity dictates we shall discuss and elaborate on specific findings. At several places in our opinion we will quote extensively from Judge Dunford's opinion.

The fundamental facts relative to the first phase of this opinion are succinctly and correctly stated in the memorandum decision of the lower court as follows:

"On January 24, 1942, J. Lloyd Mathis and Nellie Burtenshaw Mathis, his wife, who are the plaintiffs in this action, together with C. E. Kingston, 'as Trustee in Trust' for one of the defendants, to wit, Davis County Cooperative Society, Incorporated, entered into a Uniform Real Estate Contract, hereinafter referred to as Exhibit 'A,' as joint purchasers, with Western Reserve Underwriters Corporation as sellers, to purchase approximately 560 acres of land situated in Utah County, known as Austin Brothers Farm, together with described water rights and personal property. * * * By 'Supplemental Agreement' also dated January 24, 1942, and attached to Exhibit 'A,' the seller, Kingston, and the plaintiffs agreed that upon the completion of the payments * * * the deed should be executed conveying an un-

divided four-fifths of the property to plaintiffs and the remaining undivided one-fifth to 'C. E. Kingston, as Trustee in Trust for Davis County Co-op, a corporation of Utah.'

"On January 13, 1947, the plaintiffs Mathis, without Kingston, and without the Western Reserve Underwriters Corporation, original sellers, entered into an 'Agreement,' hereinafter referred to as Exhibit 'C,' with the defendants Ferrell to sell to the latter, all of the real estate and water rights described in Exhibit 'A,' for the sum of $120,000, payment of $30,000 of which was acknowledged in the agreement [down payment] with deferred [yearly] payments of '$7,500 or more, including interest at the rate of 3 percent per annum' * * * and the plaintiffs, as [sub-] sellers, covenanted to deliver title to the defendants Ferrell upon completion of payment of the purchase price. * * *

"At the time of execution of this latter agreement, plaintiffs did not have title to the described property, neither were they sole owners of the equity obtained by the purchasers under Exhibit 'A.'

"On January 23, 1947, or ten days subsequent to the execution of Exhibit 'C,' C. E. Kingston and Ethel M. Kingston, his wife, executed, acknowledged and delivered to C. Ed. Lewis, a real estate agent, as agent for plaintiffs, * * * an instrument which is marked, and will hereinafter be referred to as 'Exhibit D,' which is in words and figures as follows:

" 'January 23, 1947

" 'C. E. Lewis Company
117 East Broadway
Salt Lake City, Utah

" 'To Whom It May Concern:

" 'J. L. Mathis and Nellie M. Mathis, his wife; and C. E. Kingston and Ethel M. Kingston, his wife, for the Davis County cooperative Society, Inc., own on an 80%–20% basis of Ranch at Lehi, Utah, formerly known as Saratoga or Austin Brothers Ranch; are in process of liquidation.

" 'When audit is complete final closing of sale of Real estate, livestock, feed and machinery is sold and allotment of funds from these; it is hereby agreed that in event there is not sufficient funds to pay C. E. Kingston and Ethel M. Kingston for Davis County Cooperative Society, Inc. their equity, this property shall be transferred from Western Underwriters Corporation to J. L. Mathis and Nellie M. Mathis, secured by a mortgage at 3% per annum payable to C. E. Kingston and Ethel M. Kingston for Davis County Cooperative Society, Inc. out of all future funds derived as per sale except of interest due J. L. Mathis and Nellie M. Mathis until such an amount due C. E. Kingston and Ethel M. Kingston for Davis County Cooperative Society, Inc. has been paid in full, hereby waiving all rights and interests in this property.

" '/s/ C. E. Kingston
/s/ Ethel M. Kingston

" 'On this twenty-third day of January A.D. 1947 before me personally appeared

C. E. Kingston and Ethel M. Kingston, his wife who executed and signed the foregoing document.

"'/s/ Ardous Kingston
Notary Public
" 'My Commission Expires:
August 12, 1949

(Seal) ' "

Plaintiffs contend that the legal effect of Exhibit "D" is to transfer or assign to plaintiffs all the rights held by Kingston, as trustee for the Davis County Co-op, which rights originated under the contract (Exhibit "A") with the Western Reserve Underwriters Corporation.

All the defendants, including defendants Ferrell for reasons which will appear hereunder, attack Exhibit "D" on several grounds: (1) that Kingston did not possess any power or authority to sign the instruments for the Davis County Co-op; (2) that even assuming Kingston had authority to execute an assignment of the one-fifth interest of the cooperative, the instrument (Exhibit D) signed by him is "unintelligible, incomplete, uncertain and ambiguous to the extent that it cannot be enforced" and the lower court misinterpreted and misconstrued the document; and (3) other grounds which are either repetitious of the first two or without merit.

■ As to the question of authority, the lower court found that the instrument was authorized by the Board of Directors of the Davis County Cooperative, although authorization was not granted in writing or by formal action. In this regard, we quote and adopt in this opinion excerpts from the trial court's memorandum decision as follows:

"Of course it is not contended by defendants, nor could it be shown by Exhibit 'V,' [Minutes of Davis County Co-op] that C. E. Kingston was not in fact Trustee in Trust for Davis County Co-op, and from the record it must be concluded that he occupied that position until the time of his death. From Exhibit 'V' it is further clearly apparent that his acts in the purchase and management of the property were fully approved by the Board and by the membership. * * * Plaintiffs had never questioned the authority of C. E. Kingston to act for and in behalf of the Davis County Co-op, nor, indeed, had they any reason to do so. All of his acts had been approved during their active relationship, and no question was ever raised that would put plaintiffs even upon inquiry, to say nothing of charging them with notice, that his authority had been retracted by the Co-op. As a matter of fact such authority never was either retracted or abridged."

■ Hence, while there can be no question that the Board of Directors did give C. E. Kingston authority or confirm it, there still remains the question of the statute of frauds since the authority was not in writing. The statute of frauds, sec. 25–5–1, U.C.A.1953, provides that no interest shall be created in real property unless it is

52

in writing subscribed by the party to be charged or "by his lawful agent thereunto authorized by writing." Naturally, that section is applicable to agents of corporations, but the courts in interpreting similar provisions have adopted an exception when the person who acts under an oral authorization is either a general agent or executive officer of the corporation, Uline Loan Co. v. Standard Oil Co., 45 S.D. 81, 185 N. W. 1012, 27 A.L.R. 589. The exception frequently applied was stated in Jeppi v. Brockman Holding Co., 34 Cal.2d 11, 206 P. 2d 847, 850, 9 A.L.R.2d 1297, as follows:

"In the case of an executive officer of a corporation an exception from the requirement of written authority finds at least plausible support in reason in that, as said in the McCartney case: 'The executive officer of a corporation is something more than an agent. He is the representative of the corporation itself.' * * * This reasoning squares with sound principles and the necessities of modern business."

Kingston not only acted as trustee for the cooperative's interest in the property, but he also held the positions of General Manager and President. Moreover, the scope of authority authorized and performed was that of a general agent. The exception to the language in the statute of frauds is clearly applicable here.

Turning now to the second attack on Exhibit "D" which concerns the legal effect of the document and must entail a re-

view of the language used in the light of the surrounding circumstances, we quote extensively from the trial court's memorandum decision as follows, and adopt and incorporate in this opinion the matter so quoted:

"A mere cursory glance at Exhibit 'D' is sufficient to establish that it is very poorly drawn, is so ambiguous and uncertain as to constitute an outstanding example of the tragedy which sometimes occurs when untrained persons presume to discharge the highly technical functions of legal counsel. That fact alone, however, does not relieve the Court [nor this Court] of its responsibility to ascertain its meaning if that can be done under the provisions of law respecting this type of instrument. In searching for the meaning the Court must first examine the language used in the instrument itself and accord to it the weight and effect which the instrument itself may show that the parties intended the words to have. If then its meaning is still ambiguous or uncertain, the Court may consider other contemporaneous writings concerning the same subject matter, and may, if it is still uncertain, consider parole evidence of the parties' intention. See Burt v. Stringfellow, 45 Utah 207, 143 P. 234; Beagley v. United States Gypsum Co., Utah, 235 P.2d 783. In Miller v. Hancock, 67 Utah 202, 246 P. 949, 953, the Court says:

"Respondent cites cases to the effect that separate writings may be construed together as containing all the terms of a contract,

though only one be signed by the party to be charged: (Citing cases.) *The doctrine of these cases is well-nigh elementary. It is at least supported by the great weight of judicial opinion.*" (Emphasis added.)

The lower court after reviewing the general principles which control the scope of the inquiry, turns to an analysis of Exhibit "D" and other evidence in the case. We quote and adopt as part of our opinion the excerpt taken from Judge Dunford's memorandum opinion as follows:

"The evidence establishes that only one relationship ever existed between the plaintiffs and C. E. Kingston, and that Exhibit 'A' was the inception of that relationship. By the attached supplemental agreement, the parties to the contract agreed that their respective interests therein were four-fifths in plaintiffs and one-fifth in C. E. Kingston, Trustee-in-Trust for Davis County Cooperative Society. In Exhibit 'D,' it is recited that the plaintiffs and C. E. Kingston 'for the Davis County Cooperative Society, Inc. own on an 80%–20% basis of Ranch at Lehi.' Furthermore they identify the property as the 'Saratoga or Austin Brothers Ranch' and the property is identified in the Exhibit 'A' as 'the Austin Brothers Association Farm.' Clearly, then, Exhibit 'D' is in respect to the rights of the parties in and to the contract of purchase (Exhibit 'A') and the property being purchased thereunder.

"* * * Exhibit 'D' clearly indicates that the property, and the parties' respec-tive interests, were 'in process of liquidation'. * * *

"It is clear, too, [from other evidence in the record] that at the time of making Exhibit 'D,' the parties had before them the 'sale of Real Estate, (Exhibit 'C'), livestock, feed and machinery.' It is stated, then that if from these sales, there was not realized sufficient funds to pay the equity of C. E. Kingston (and Ethel M. Kingston) for Davis County Cooperative Society, Inc., the property described in Exhibit 'A' was to be transferred from the sellers in Exhibit 'A' to plaintiffs and the balance of the value of the Kingstons—or Davis County Co-op—was to be 'secured by a mortgage at 3% per annum, payable to C. E. Kingston and Ethel M. Kingston for Davis County Cooperative Society, Inc., out of all future funds derived as per sale. * * *' That is certain which is capable of being ascertained and definitely fixed. See 6 Words & Phrases, Perm. Edition, page 41, and cases cited. With this recital, the Kingstons signed and acknowledged the instrument 'hereby waiving all rights and interests in this property,' Austin Brothers Ranch, the metes and bounds description of which are stated in Exhibit 'A' and agreeing that the property should be trans-ferred from Western Underwriters to plain-tiffs.

"The parties understood the instrument and gave it a practical interpretation con-sistent only with the foregoing analysis. Immediately upon execution of plaintiff's

54

Exhibit 'C,' Ferrells went into possession of the property. * * *

* * * * * .*

"Thus it must be concluded not only that the instrument Exhibit 'D' is not so indefinite, unintelligible or uncertain as to be entitled to no consideration by the Court, but it must also be held that the parties interested in the property at the time fully understood it and gave it the force and effect which the Court has outlined above."

■ Our appraisal of Exhibit "D" is that it constitutes a present assignment of the cooperative's interest in the property to the plaintiffs, and in consideration, plaintiffs made a promise to the effect that upon the occurrence of a specified event, viz. the completion of an audit between the cooperative and the plaintiffs, a duty of immediate performance would arise either (1) to pay the cooperative for its one-fifth interest less any amount due the plaintiffs under the audit, or (2) to execute a mortgage with the cooperative as mortgagee for any amount due the cooperative which remained unpaid after the audit. On assignments see Wood v. Casserleigh, 30 Colo. 287, 71 P. 360. On conditions see Fraley v. Wilkinson, 79 Okl. 21, 191 P. 156; 3 Williston on Contracts (Rev.Ed.1936) Sec. 667A; 1 Jones on The Law of Real Property in Conveyancing (1896) Sec. 638. The problems relative to the audit between the cooperative and the plaintiffs will be resolved in the final phase of this opinion; we now turn to a consideration of rights of defendants Ferrell in the same funds.

■ As pointed out in the foregoing, the plaintiff's contract with Ferrell (Exhibit "C") was an agreement to sell all the real estate and rights described in Exhibit "A," which were all the rights owned by Kingston as trustee in trust for the Davis County Co-op and by the plaintiffs. Ferrell went into possession of the property on or about January 13, 1947, and remained in possession until the property was sold in accordance with the stipulation mentioned heretofore in this opinion. In 1948, after Kingston had executed the assignment to plaintiffs of the undivided one-fifth interest (Exhibit "D," executed on January 23, 1947) the cooperative executed and delivered a mortgage on that same interest to the Mill Fork Coal Co. to secure payment of a promissory note for the sum of $8,140. Subsequently on June 15, 1948, the cooperative executed and delivered to Alonzo F. Madsen and Leona F. Madsen, for a valuable consideration, a deed to that same one-fifth interest, subject to the mortgage to the Mill Fork Coal Company. It is undisputed that the assignment to the plaintiffs (Exhibit "D") was not recorded; however, the lower court found that Madsen could not prevail against plaintiffs even though he had deed from the co-op June 15, 1948, since the relationship between Madsen and Ferrell was such that they would have been "almost opague in their blindness" not to have known of Exhibit "D" and the relationship of the co-operative and the plaintiff before Exhibit "D" was executed. A great body of evidence supports this finding of

knowledge. Madsen was not a bona fide purchaser for value, without notice, and therefore, he acquired no interest in the land. Toland v. Corey, 6 Utah 392, 24 P. 190.

Ferrell alleges that when he was confronted with the deed from the cooperative to Madsen, he divided possession and profits with Madsen for the years 1948 to 1951; that he ultimately purchased Madsen's one-fifth interest; and that he has been damaged accordingly. Ferrell places great emphasis on the contract with the plaintiffs (Exhibit "C" wherein paragraph 9 reads as follows:

"In the event there are any liens or encumbrances against said premises other than those herein provided for or referred to, or in the event any liens or encumbrances other than herein provided for shall *hereafter accrue against the same by acts or neglect of the Sellers,* then the Buyers may at their option, pay and discharge the same and receive credit on the amount then remaining due hereunder in the amount of any such payment or payments and thereafter the payments herein provided to be made may, at the option of the Buyers, be suspended until such a time as such suspended payments shall equal any sums advanced as aforesaid." (Italics added.)

The first question which arises under this clause is whether Ferrell was justified in his dealings with Madsen so that the clause could be invoked against the plaintiff. The trial court treats this problem at length, citing the many circumstances which lead to the conclusion which we quote and adopt as part of our opinion as follows:

"[Ferrell knew] that Exhibit 'A' existed and was not then fully performed, and that C. E. Kingston as trustee for Davis County Co-op, was one of the owners and sellers of $120,000 worth of property which they had been interested in buying from a date prior to November 22, 1946, and which, by their business sense, they had reduced from $200,000, Lewis' [a real estate broker] first listing, to $140,000, J. A. Ferrell's first offer, to $120,000, the final consideration. Such business men just do not deal with sums that large without knowing the facts. * * *

"Giving the Ferrells credit for the intelligence which was manifested to the Court at the trial, and by their capacity to deal in $100,000 properties, and upon their knowledge of the interest theretofore existing in C. E. Kingston as trustee for the Davis County Co-op, the [District] Court [and this Court also] cannot believe that they had no knowledge of the existence and terms of Exhibit 'D'. * * *

"It may be a circumstance, but it is one which argues strongly against the bona fides of both Ferrells and the Madsens, that with all of the knowledge which they possessed, [that they did not seek] to give Mathis a fair opportunity to defend, as against any claim of either Davis County Co-op, or of defendants Madsen, the quiet possession

which Mathis had promised them. If Mathis had been informed of the assertion of title to the undivided one-fifth interest by either Davis County Co-op or Madsens as their grantees, it would have been a simple expedient for them to seek an injunction to restrain interference with Ferrells' possession, thus assuring their quiet possession until the effect of the adverse claim could be judicially determined.

\*    \*    \*    \*    \*    \*

"Ferrells and Madsens by their dealings with knowledge of the weakness of their positions, may have themselves involved in collateral issues, but as there are no cross complaints, the Court is not called upon to settle their respective equities as against each other."

We accept the foregoing analysis and the determination that the Ferrells have no rights against the plaintiffs with respect to the dealings with Madsen; however, this does not preclude an inquiry into the Ferrells' rights against the plaintiffs arising from a different transaction. There is evidence in the record that the Ferrells paid the loan secured by the mortgage which the Davis County Co-op had executed to the Mill Fork Coal Company. The lower court made no finding on this point, but only stated in its memorandum decision that the mortgage had been satisfied and consequently the mortgagee no longer has any interest in this action. Assuming the Ferrells paid either all or a portion of the loan secured by the mortgage executed to the

Mill Fork Coal Company, will that fact establish a right against the plaintiffs for a breach of their contract (Exhibit "C") with the Ferrells? The above quoted clause states that "in the event *any liens or encumbrances* other than herein provided for shall *hereafter* accrue against the same by acts or neglect of the Sellers, then the Buyers may at their option, pay and discharge the same and receive credit on the amount then remaining due hereunder. \* \* \*" (Italics added.) It has been mentioned that the assignment from the cooperative to the plaintiffs (Exhibit "D") was not recorded, but Madsen could acquire no interest since he had notice; similarly, the transactions between the Ferrells and the Madsens could not fall within the scope of the above quoted clause due to the apparent collusion between the parties. Although the evidence indicates that the Mill Fork Coal Co. exercised good faith in taking the mortgage, the fact remains that the Ferrells were in possession of all the property, and the instrument (Exhibit "C") under which Ferrells held possession was a contract to give a deed to the entire property. Further, as pointed out heretofore, Davis County Co-op had assigned (Exhibit "D") its interest in the property to Mathis, with the cooperative's right to receive consideration being dependent upon the outcome of the audit. Therefore, at the time the Co-op executed the mortgage to Mill Fork Coal Co., it had no rights in the property. Hence, Mill Fork Coal Co., as mortgagee, could acquire no greater rights, even

though Exhibits "C" and "D" were not recorded, since the possession by Ferrells was constructive notice. The rule is stated in Marion Mortgage Co. v. Grennan, 106 Fla. 913, 143 So. 761, 763, 87 A.L.R. 1492, as follows:

"Actual possession * * * when open, visible, and exclusive, will put upon inquiry those acquiring any title to or a lien upon the land so occupied to ascertain the nature of the rights the occupants really have in the premises."

See also Meagher v. Dean, 97 Utah 173, 91 P.2d 454. Mill Fork Coal Co. did not satisfy this rule, could not acquire a valid lien against the property, and hence, when the Ferrells paid the mortgage, they acted as volunteers. Whether the Ferrells have an action against the Co-op for unjust enrichment or otherwise is not for this court to determine since there is no cross-complaint. In no event, however, have the Ferrells established a right against Mathis since no valid lien or encumbrance had accrued against the property.

We now direct attention to the activities of the cooperative and the plaintiffs during the interval of time between January 24, 1942, when they contracted to purchase the Austin Brothers Farm from the Western Reserve Underwriters Corporation (Exhibit "A"), and January 23, 1947, when the cooperative assigned its interest to the plaintiffs (Exhibit "D") and the Ferrells took possession under Exhibit "C." The facts are these: By the "Supplemental Agreement" attached to Exhibit "A," the parties agreed that the plaintiffs had an undivided four-fifths interest, and Kingston, as trustee for the Davis County Co-op, had the remaining one-fifth interest. Possession of the property was taken immediately upon the execution of Exhibit "A," and approximately three months later the parties executed two documents constituting agreements for the operation of the farm during the common tenancy, which agreements are hereinafter referred to as Exhibits "R" and "E." On March 1, 1944, a "Farm Lease" (Exhibit "2") was drawn which purported to be a lease between the plaintiffs and Kingston in his trustee capacity, as lessors, and the plaintiffs, Kingston (without mention of his trustee capacity) and six other individuals, as lessees. The trial court found that full management of the property was turned over to Kingston, who made periodic reports to the plaintiffs and the cooperative. The property was operated and controlled under the foregoing documents until January of 1947 when the Ferrells took possession.

On June 30, 1949, plaintiffs filed a suit in the District Court for Salt Lake County against the Davis County Cooperative Society, Inc., Charles W. Kingston, as administrator of the estate of Charles S. Kingston, deceased and former trustee of the cooperative, and the other individuals who were named as lessees in Exhibit "2," alleging fraud, praying for an accounting and complaining of damages amounting to

$60,000. This action is now pending in the District Court of Salt Lake County. The instant suit is directly related to that action because of the following developments: First, the stipulation mentioned at the outset of this opinion was for the purpose of clearing title to the property, paying off the interest of Western Reserve Underwriters Corporation, and permitting a sale of the property with the proceeds to be placed in escrow. Pursuant to that stipulation, all the property was sold by the Ferrells who paid the total amount due, plus interest, on their contract with the plaintiffs (Exhibit "C"), a portion of which was paid directly to the plaintiffs, Western Reserve Underwriters Corporation also received payment, and a balance of $39,300 was placed in escrow pending the outcome of this suit. The decree of the lower court established "the right of the plaintiffs to the balance of the money held in escrow as against any and all named defendants, subject, however, to the right of Davis County Cooperative Society, Incorporated, a corporation, to receive from such funds, such proportion thereof as of January 23, 1947, as may be determined to be due it by the District Court of the Third Judicial District in and for Salt Lake County, Utah, upon the proceedings for accounting therein pending." Secondly, the lower court expressly reserved "an interpretation of Exhibits "R," "E," and "2," and consideration of such other evidence as may bear upon such relationship, for determination in the accounting action."

Due to the obvious complexities in this cause, the fact that the foregoing matters are directly and solely related to the accounting action, and the manifest willingness of the parties in the Pre-Trial in the instant case to settle collateral matters in the pending suit in the District Court of Salt Lake County, we think the approach of the lower court is judicious and reasonable.

The defendant Davis County Co-op ardently objects to one facet of this approach, contending that although the lower court refused to construe Exhibits "R," "E," and "2" and "consideration of other evidence as may bear upon such relationship," at the same time it found that the defendant cooperative was in possession of the land during the five-year period, which determination, it claims, is an improper construction of said exhibits, and hence, an obvious inconsistency is created. The cooperative contends that the court by this illogical reasoning, has established a res judicata with respect to the element of possession, which is material to the pending action in the District Court of Salt Lake County and has unduly prejudiced the defendant's position in that action.

Actually, the lower court did not unequivocally find that the cooperative was in possession although such an inference can be drawn from the following finding of fact, since possession by Kingston, as agent or trustee, would be constructive possession of the corporate entity:

"5. That upon execution of said contract 'Exhibit A,' the Plaintiffs turned full management of all the property covered thereby over to *C. E. Kingston, as Trustee-In-Trust for Davis County Cooperative Society,* and that the *said* C. E. Kingston, together with other members of the said Society, *were in possession* of the property from that time and until proceedings for the sale of the property and liquidation of the same * * *, and that during said period of time periodic reports were made by the said C. E. Kingston as Trustee-in-Trust for said Society to the Plaintiffs of the operations conducted on said property, and that during said period of time that the property was so possessed and operated the Plaintiffs received nothing for their investment apart from the value of their equity to the land and to the personal property being purchased under said Contract." (Italics added.)

Irrespective of the scope of possession established by the finding, we do not propose to examine the effect of possession by one co-owner, nor is it our prerogative to determine the question of res judicata before it is presented to a lower court. It appears, however, that the finding of possession is material in this case only with respect to the question of authority in Kingston to act for the cooperative. Since Kingston's authority, as heretofore pointed out, can be proved by a myriad of facts aside from possession, the finding is unnecessary for the purposes of this case. See Glen Allen Mining Co. v. Park Galena Mining Co., 77 Utah 362, 296 P. 231; 30 Am.Jur., Judgments, Sec. 182. We, therefore, overrule the finding of possession, which in no way affects the rights of the litigants in this cause, but clears the case of doubts which would confront the District Court of Salt Lake County in the pending suit for accounting.

We agree with the lower court "that the division of the escrow money depends upon determination of two primary questions: First, the Court charged with rendering an account between plaintiffs and defendants must determine upon what basis profits and expenses are to be shared, and second, in view of such determination, what proportion of both expenses and profit each is entitled in the operation." Naturally the amount which may be necessary to compensate the Davis County Cooperative, as assignor of its one-fifth interest under the terms of Exhibit "D," will be offset by any payments already made by plaintiffs.

The judgment below is affirmed. Costs to respondents.

McDONOUGH, CROCKETT, and HENRIOD, JJ., concur.

WADE, J., concurs in the result.