**Ned O. GREGERSON, Plaintiff and Appellant,**

v.

**James L. JENSEN and Nedra Jensen, his wife, Defendants and Respondents.**

**No. 16339.**

Supreme Court of Utah.

Sept. 4, 1980.

---

**5.** Rule 63(13), Utah Rules of Evidence.

Hans Q. Chamberlain, Cedar City, for plaintiff and appellant.

Dale M. Dorius, Brigham City, for defendants and respondents.

MAUGHAN, Justice:

The plaintiff brings this appeal from the District Court's judgment dismissing his suit for failure to establish a prima facie case. We reverse and remand the matter for a new trial. All statutory references are to Utah Code Annotated, 1953, as amended.

On September 29, 1971, the plaintiff, Ned Gregerson, hereinafter "Gregerson," met with the defendant, James Jensen, hereinafter "Jensen," at a service station which the defendant managed. While at the station, Gregerson, who was accompanied by his father, asked Jensen if he would sell a piece of property he owned in Gunnison, Utah. At the time Gregerson was in the final months of military duty and was interested in opening a dental clinic in Gunnison.

After the initial discussion of the sale at the service station, the three men proceeded to Jensen's house to view the land and continue negotiations. The plot of land which was adjacent to Jensen's home consisted of an unimproved pasture surrounded by a barbed wire fence. Due to its position adjacent to the community hospital it was a logical location for a dental clinic.

While at the property, Jensen informed Gregerson that due to the parcel's proximity to his house he would not·sell the entire area because he needed adequate room for his cesspool and drain fields. Gregerson

acquiesced in this requirement and agreed to pay Jensen $700 for the remaining land.

After the agreement was reached the defendant returned to the service station and the plaintiff and his father went to a local contractor to investigate potential building plans. The next morning the plaintiff went to the defendant's house where he gave the defendant a check for half the amount of the sale price. While at the house Gregerson mentioned concern about the property's legal description and whether Jensen's wife had an interest in the property. Pursuant to the inquiry concerning the legal description Jensen's wife presented Gregerson with a tax valuation notice which contained a description of both the pasture area and the adjacent lot upon which the Jensen house sat. In relation to the second concern the parties acknowledged Jensen held sole interest in the land and, therefore, Gregerson's check was issued to him alone.

Following the meeting in the house, Gregerson, his father, and a local contractor returned to the property in question to ascertain by measurement if it was large enough to accommodate a proposed office building and parking lot. Using the description on the tax evaluation notice and local stationary survey markers the men measured the pasture area, exclusive of that land which Jensen indicated he needed for his cesspool and drain fields. While he did not participate in the measuring there is evidence that Jensen was present during these activities. The result of the measurements indicated the existing fence accurately bordered the Jensen's property.

Upon completing the measurements, Gregerson went to several local banks to acquire information concerning the availability of construction loans. After finding a bank which was willing to loan him the necessary construction financing, Gregerson returned to the service station managed by Jensen to inform him of the availability of the monies and the necessity of Jensen's obtaining the release of a mortgage which encumbered the property and drawing up and delivering a deed pursuant to their agreement.

Concerning the encumbrance on the parcel of land, Jensen had an outstanding mortgage on his property holdings in Gunnison which consisted of his house and lot and the pasture adjoining it. At the time of the initial negotiations and agreement Jensen told Gregerson that he was sure the bank would release the encumbrance on the pasture as they had done in a similar, prior transaction.

Shortly after seeing Jensen at the station and requesting delivery of the deed, Gregerson left Gunnison and returned to Texas to complete his military commitment. When, after two weeks had passed, Gregerson had not received the deed, he phoned Jensen and inquired about the delay. Jensen explained he simply had failed to get the deed but assured Gregerson he would take care of the matter immediately. However, following other dilatory responses to requests that Jensen deliver the deed, Gregerson initiated this suit for specific performance of the prior contract of sale.

Following the presentation of the plaintiff's case at the subsequent trial, which began on September 27, 1978, the District Court granted the defendant's motion to dismiss the action on the grounds the plaintiff had failed to establish a prima facie case. A review of the trial transcript indicates the District Judge based his decision primarily on the absence of any description of the property in question to support the specific performance decree. The Court explained:

> "The thing that bothers me, Counsel, is that I don't think with this state of the record that I can identify what the property is that was purchased. That's my problem, that's why I kept asking you is there any further description, what is the description"?

However, relating to the lack of adequate description of the property in question, the defendant's testimony during the trial revealed the existence of a deed relating to the property in question. This testimony was contrary to the defendant's previous answer to the plaintiff's interrogatories which denied the existence of any other

documents regarding the sale of the said property.

This deed, which was in the possession of a local bank, contained the names of the parties here involved as Grantor and Grantee and a detailed legal description of the pasture property. Analysis of this description reveals it mirrored that found in the tax valuation notice relating to the fenced pasture land, but excluded the area designated by Jensen as necessary for his own use.

At the trial Jensen testified that the only reasons he did not sign this deed and deliver it to Gregerson were the misspelling of his wife's name and the advice of a local banker that Jensen should await the arrival of Gregerson before signing the document and delivering it.

At the completion of the trial Gregerson was delayed in examining this document by Jensen's counsel's failure to make the original available for examination. When Gregerson finally received the deed, he submitted it to the court with an accompanied motion for a new trial. Following a hearing, the District Court denied the plaintiff's motion on the grounds: "The existence of an unsigned document not prepared by the defendant would still not make a prima facie case for the plaintiff."

We do not agree with this conclusion. Rule 59(a), Utah Rules of Civil Procedure provides:

"... a new trial may be granted to all or any parties and on all or part of the issues, for any of the following causes; ..."

\* \* \* \* \* \*

"(4) Newly discovered evidence, material for the party making the application, which he would not, with reasonable diligence, have discovered and produced at trial."

In order for a new trial to be granted on the basis of newly discovered evidence the moving party must show: (a) there is material, competent evidence which is in fact newly discovered; (b) by due diligence the evidence could not have been discovered and produced at trial; and (c) the evidence must not be merely cumulative or incidental but must be of sufficient substance that there is a reasonable likelihood that with it there would have been a different result.[1]

In the present case, the trial judge based his denial of the plaintiff's motion on his conclusion that the newly discovered deed was not substantial, material evidence from which it appeared there was at least a reasonable likelihood that its introduction would affect the result of a new trial. Although wide discretion is reposed in the trial judge in granting or denying a new trial on the basis of newly discovered evidence,[2] in cases of equity, when the trial court has based its rulings upon a misunderstanding and misapplication of the law, where a correct one would have produced a different result, the party adversely affected is entitled to have the error rectified in a proper adjudication under correct principles of law.[3]

The District Court's ruling evidences a misunderstanding of the applicability of the newly discovered deed. The significance of the absence of Jensen's signature on the deed stems from the Statute of Frauds which is codified in 25–5–1. That section provides in pertinent part that no estate or interest in real property shall be granted otherwise than by deed or conveyance in writing subscribed by the party granting the same.

This Court has previously held that several writings may be construed together as containing all the terms of a contract for the sale of real property, notwithstanding the fact they are not all signed by the party

---

1. *Universal Investment Co. v. Carpets, Incorporated*, 16 Utah 2d 336, 400 P.2d 564 (1965).

2. *Crellin v. Thomas*, 122 Utah 122, 247 P.2d 264 (1952).

3. *Reed v. Alvey*, Utah, 610 P.2d 1374 (1980); see *Ferris v. Jennings*, Utah, 595 P.2d 857, 859 (1979).

to be charged.[4] Where more than one writing is used to satisfy the requirements of the Statutes of Frauds, however, some nexus between the writings must be shown.[5] This requirement may be satisfied either by express reference in the signed writing to the unsigned one, or by implied reference gleamed from the contents of the writings and the circumstances surrounding the transaction. In the latter instance, parol evidence may be used to connect an unsigned document to one that has been signed by the person to be charged.[6] As explained in *Good v. Paine Furniture Co.*:[7]

> "A memorandum consisting of several signed and unsigned writings will satisfy the Statute of Frauds so long as those writings clearly refer to the same subject matter or transaction. Parol evidence will be considered if it convincingly shows that the signed and unsigned writings are connected to one another and have been assented to by the parties.[8]

 In the present case, the check which Gregerson delivered to Jensen, who endorsed it and deposited the proceeds in his joint checking account, was inscribed by Gregerson with the notation: "½ payment on land as agreed—other ½ payment when deed delivered." Thus while not referring

expressly to a specific deed, the notation on the check evidences the expectations of the parties that a deed would be involved in the transaction.[9] Added to this implied reference to the newly discovered deed are the contents of that deed which expressly refer to the parties in question and specifically describe the subject matter property.

Considering the implied reference found in the signed writing, the contents of the deed, the fact the deed was in the custody of the bank within a few days after the delivery of part payment, and Jensen's acknowledgment of the propriety of the deed, we believe the two writings evidence a single transaction and should be read together as fulfilling the requirements of the Statute of Frauds.

If the writings are united as one memorandum of the contract then the deficiency of an inadequate designation of the property to be conveyed is eliminated and cannot be relied upon to deny specific performance. Thus, if the newly discovered deed would have been accepted as evidence there is a reasonable likelihood the result of the trial would have been different. Therefore, the District Court's denial of the plaintiff's mo-

4. *Miller v. Hancock*, 67 Utah 202, 246 P. 949 (1926); see also *Young v. Independent Pub. Co.*, 273 S.C. 107, 254 S.E.2d 681, 683 (1979); cf. *Mathis v. Madsen*, 1 Utah 2d 46, 261 P.2d 952 (1953).

5. *Bennett v. Moring*, 33 Colo.App. 390, 522 P.2d 741 (1974); 2 Corbin, Contracts, § 514; see also 72 Am.Jur.2d, Statute of Frauds, § 374, p. 900.

6. See *Haspray v. Pasarelli*, 79 Nev. 203, 380 P.2d 919 (1963); as explained in *Flegel v. Dowling*, 54 Or. 40, 102 P. 178 (1909): ". . . when all the writings adduced, viewed together in light of the situation and circumstances of the parties at the time they were written, show unmistakably that they relate to the same matter, and constitute several parts of one connected transaction, so that the mind can come to no other reasonable conclusion from the evidence so offered than that they were each written with reference to those concurrent or preceding, then there is such a reference of the one to the other as satisfies the rule, although reference in express terms does not appear. The rule is one founded on reason; and when as practical men, we look at the writings, and see

inhering in them evidence which entirely satisfies the mind that they all relate to one general transaction, there is no reason why they should not be so construed. There is in such a case a direct reference of the one to the other within the meaning of the law." 102 P. at 181–182. (Quoting from *White v. Breen*, 106 Ala. 159, 19 So. 59 (1894)); see generally 81 A.L.R.2d 991.

7. *Good v. Paine Furniture Co.*, 35 Conn.Sup. 24, 391 A.2d 741 (1978).

8. Id., 391 A.2d at 743; see also *Haspray v. Pasarelli*, supra note 6, 380 P.2d at 921. ("If they were intended by the parties to constitute one transaction appellants should have been permitted to present evidence to show this . . ., and the fact that Exhibit 'E' is an unsigned document does not preclude the admission of parol evidence to connect Exhibit 'E' with Exhibit 'A' ").

9. That parties are obliged to cooperate with each other in good faith in the performance of a contract, see *Ferris v. Jennings*, Utah, 595 P.2d 857 (1979).

tion was error and the order is reversed and a new trial granted.

CROCKETT, C. J., and STEWART, J., concur.

HALL, Justice (dissenting).

I am constrained to dissent from the position adopted by the majority for I am of the opinion that it constitutes an unwarranted departure from both the statutory and the case law.

The majority of the Court concedes that the check in question, standing alone, is not a sufficient memorandum as will satisfy the Statute of Frauds[1] for it does not contain all of the essential terms and provisions of the contract.

The Statute of Frauds provides, in part, that "[e]very contract ... for the sale, of any lands, ... shall be void unless the contract, or some note of memorandum thereof, is in writing subscribed by the party by whom the ... sale is to be made [generally referred to as "the party to be charged"] ... "[2]

This Court has construed the foregoing statute on numerous occasions. In *Adams v. Manning*[3] the Court held that the following language contained in a receipt was insufficient to satisfy the statute:

October 19, 1907. Received of H. W. Manning thirty dollars ($30) as part payment of thirty acres of land. Price to be $100 for said land.

In *Birdzell v. Utah Oil Refining Co.*[4] the Court stated the matter as follows:

It is fundamental that the memorandum which is relied upon to satisfy the statute of frauds must contain all of the essential terms and provisions of the contract.

In *Zion's Properties, Inc. v. Holt*[5] the Court construed the words "as per agreement of 12–8–73" written on a check as not being a sufficient memorandum in writing to modify a written contract for the sale of land as would satisfy the Statute of Frauds.

In light of the foregoing pronouncements of the law, the majority of the Court seeks to cure the contract deficiency evident in the instant case by construing an *unexecuted* and *undelivered* deed as a part thereof.[6] In support of its position, it cites the case of *Miller v. Hancock.*[7]

I take no exception to the general proposition espoused in *Miller v. Hancock* that several writings may be construed together as containing all the terms of a contract. However, that case does not stand for the proposition that writings of any *quality* may be utilized to ascertain the terms of the contract. In fact, that case is clearly distinguishable on its facts from the case at hand. *Miller v. Hancock* dealt with deeds that not only were *executed* but also *delivered* by *placement in escrow by both parties pursuant to agreement.* No such authenticity of related writings exists in the instant case.

Irrespective of the foregoing, the following all–important point, not noted by the majority of the Court, is further dispositive of this appeal.

While the law remains relatively flexible as to the type of "signature" which will satisfy the requirements of the Statute of Frauds, and as to its placement on the writing, it nevertheless recognizes the necessity for the signature to be affixed with the intent or purpose of authenticating the terms of the writing. "[T]here must be inscribed on the memorandum, with the intention thereby to authenticate the document, the name of the party to be charged. ... It is not sufficient that the party's name appears on the memorandum or document merely to identify him as one of the contracting parties or for some wholly ex-

---

1. U.C.A., 1953, 25–5–1 et seq.

2. U.C.A., 1953, 25–5–3.

3. 46 Utah 82, 148 P. 465 (1915).

4. 121 Utah 412, 242 P.2d 578 (1952).

5. Utah, 538 P.2d 1319 (1975).

6. An unexecuted and undelivered deed is a nullity and therefore could not be part of any agreement. See 23 Am.Jur.2d Deeds, Sec. 136.

7. 67 Utah 202, 246 P. 949 (1926).

traneous purpose. It must have been inscribed as an authentication of the contents of the memorandum." [8]

In the instant case, Jensen's endorsement in blank of the check did not authenticate the terms of Gregerson's "memorandum" set forth on the front thereof.

Under Utah law, the transfer or negotiation of a negotiable instrument is ineffective absent the endorsement of the transferror.[9] Obviously, the endorsement of a negotiable instrument has, as its primary purpose, the negotiation for value of the instrument. One desiring to demonstrate an ulterior purpose for such endorsement need produce evidence to that effect. In the absence of such evidence, no presumption arises that the transferor of the instrument, simply by endorsement becomes contractually bound by the terms of a reference memorandum placed on the face of the instrument by the maker.[10]

I deem the majority's reliance on Jensen's endorsement of the check as a "signature" for the purpose of satisfying the requirements of the Statute of Frauds as being precluded by law. There is nothing in the record before us to support the conclusion that Jensen, by endorsing the check, intended to demonstrate the authenticity of the "memorandum" on the front thereof as a portion of an underlying agreement. In fact, Jensen disclaims any awareness on his part that the memorandum appeared on the face of the check at the time he endorsed it. Hence his endorsement of the check is not to be viewed as a "signature" as would authenticate the memorandum.

I would affirm the judgment of the trial court.

WILKINS, J., concurs in the dissenting opinion of HALL, J.

---

8. 2 Corbin on Contracts. Sec. 520. See also, 4 Williston on Contracts, Third Edition, Sec. 585 and Restatement 1, Contracts, Sec. 210.

9. See U.C.A., 1953, 70A-3-201(3).

10. See 11 Am.Jur.2d, Bills and Notes, Sec. 193.